## WELD et al. *v.* SHAW et al.

Where the bills of sale for a crop are made out in the name of the factor, and the receipts on payment are signed by him, he will be liable personally to the purchaser for any deficiency in the quantity actually delivered, though the purchaser knew, at the time of the sale, that the party from whom he bought was acting as agent.

Where money has been paid to a factor for the use of his principal, to which it is afterwards discovered that the latter is not entitled, the factor will be liable to an action at the suit of

WELD
v.
SHAW.

the person from whom he received it, unless he has, before action brought, actually paid over the amount to his principal, or done something equivalent thereto. The mere passing of the money to the credit of the principal on the factor's books, will not exonerate the latter from liability.

APPEAL by the defendants from a judgment of the Commercial Court of New Orleans, *Watts*, J,

*G. B. Duncan*, for the plaintiffs, cited Story on Agency, 266–9. 2 Kent, pp. 629–30, s. 41.

*C. M. Randall*, for the appellants, contended that they are not liable, having acted as agents, and their principal having been made known to plaintiffs. C. C. 2981, 2982. *Zacharie* v. *Nash*, 13 La. 21. *Hazard* v. *Lambeth*, 3 Rob. 378. Story on Agency, § 263. Plaintiffs contracted with the principal, defendants being only agents for the delivery of his crop.

The judgment of the court was pronounced by

SLIDELL, J. The plaintiffs seek to recover from the defendants damages, for the alleged violation of a contract respecting certain sugar and molasses, produced on the plantation of *Nolan*, a planter in this State, and also to get back certain alleged over payments. The claim consists of three items, to wit: the value of one hogshead not delivered; the difference between the quantity of molasses charged and that actually received; and the loss of profits by the non-delivery of twenty hogsheads of sugar, alleged to have formed part of the lot sold, but which, it is contended by the defendants, was not included in the sale.

The question to be considered, before examining the items in detail, is, whether the action is properly brought against *Shaw & Co.*, or whether, as they contend, *Nolan* is alone liable.

The material facts affecting the general question are, that the plaintiffs had sent their agent into the country to visit sugar estates and make bargains for crops. This agent went, in March, 1845, to the plantation of *Nolan*, examined a portion of his crop, and made an offer for it. No bargain was made, but *Nolan* told him *Shaw & Co.* were his agents. The witness returned and reported to the plaintiffs, who went to *Shaw & Co.* and made a contract with them for the sugar and molasses at *Nolan's* plantation. It was agreed that the sugar should be weighed at the plantation, on the 10th April, 1845; and the molasses guaged at the same time. The sugar, after being weighed, was to remain on the plantation, if the purchasers chose, but at their own risk. No precise quantity of sugar and molasses was stipulated. Early in April the plaintiffs' agent went with *Shaw*, and a weigher employed by the plaintiffs, to *Nolan's* plantation. One hundred and seventy hogsheads were weighed, and a portion of the molasses barrels were guaged, by *Nolan's* nephew, in the presence of the weigher, who had been requested by the plaintiffs to supervise the guaging. After the agent and *Shaw* returned to the city, *Shaw & Co.* gave the plaintiffs a written order on *Nolan* for the sugar and molasses, on the 10th April, 1845. Upon this order the plaintiffs received the principal part of the molasses soon afterwards, and the residue, with the sugar, in August following. The bills of these sales were made out as "bought of *John R. Shaw & Co.*," and the receipts of payment were signed in the same way. In these bills and receipts *Nolan* is not named as principal, and the only way in which his name is mentioned is, that the sugar and molasses is stated as being on his plantation. The payment for 270 hogsheads of sugar was made to *Shaw & Co.*, on the 10th April, 1845;

and moneys were paid from time to time to them, in like manner, on account of the molasses; the principal payment being made on the 10th April.

Under this state of facts we consider *Shaw & Co.* as personally liable to the plaintiffs. By giving the invoices and receipts in their own name, and as for goods bought of themselves, they are precluded from sheltering themselves under the plea of agency, although it was known at the time to *Weld & Co.* that they were *Nolan's* factors. See the case of *Jones* v. *Littledale*, 6 Adolphus and Ellis, 482. *Hastings* v. *Lovering*, 2 Pickering, 221. Besides, if there could be a question as to the personal liability created by these acts, there is another well settled principle which the plaintiff has a right to invoke. Where money has been paid to a factor for the use of the principal, to which the latter is discovered afterwards not to be entitled, the factor will be liable to an action at the suit of the person from whom he received such money, as for money had and received to his use, unless he has, before action brought, actually paid over the money to his principal, or done something which is equivalent thereto. See *Buller* v. *Harrison*, Cowper, 566, and the cases cited in Russell on Brokers and Factors, 565. Nor is the case altered by the fact, that the money has merely been passed to the credit of the principal on the agents' books. Now, in the present case, the defendants appear to have had notice of the plaintiffs' claims before the institution of this suit. The suit was brought on the 21st November, 1845, the accounts of defendants with the planter had been settled on the 20th November, by striking a balance; but it was in *Nolan's* favor for $1,000, being more than the whole amount claimed by plaintiffs; and so the balance appears to have stood, when the defendants were cited.

As to the items of plaintiffs' claim, we think the defendants are clearly bound to refund the value of one hogshead of sugar. Their invoice was for 270 hogsheads sold, and for this they were paid in full, on the 10th April, 1845; and they gave the plaintiffs an order on *Nolan* for 270 hogsheads. Only 269 hogsheads were really delivered. Under the agreement, the plaintiffs had a right to leave the sugar on *Nolan's* plantation until August. It is true, it was weighed in April, and was from that time to be at the plaintiffs' risk. If it had been destroyed by a fortuitous event, the loss would have been the plaintiffs'; but as the non-delivery of this hogshead is wholly unaccounted for, the defendants are liable.

We are satisfied also that there was a short delivery of the molasses, and for this item also judgment was correctly rendered by the court below.

As to the other item, the difference in price of 20 hogsheads, being the alleged residue of *Nolan's* crop, for the whole of which the plaintiffs say they contracted, we do not think the case made out against *Shaw & Co.* It appears that, besides the 270 hogsheads which *Nolan* had in the purgeries, and which were exhibited to plaintiffs' agent, at his first visit, there were twenty hogsheads in another building; it is left doubtful, under the testimony, whether this was comprehended in the contract. We have held *Shaw & Co.* liable, because they made out the invoices and other vouchers in their own name as vendors. They never made out invoices, receipts, or orders, for more than 270 hogsheads; and there is nothing in the evidence to show that they were aware that the plaintiffs looked to them, or even to *Nolan*, at the time, for more than that number. The claim for damages on that score, if it exists, must be litigated with *Nolan*. Even if the present suit were against him, as the evidence stands, it is not clear that the plaintiffs could be considered as having made out that part of the case.

71

WELD
*v.*
SHAW.

It is therefore decreed that the judgment ef the court below be reversed, and that the plaintiffs recover of the defendants the sum of $168 28, with interest from the 22d November, 1845, and costs in the court below; the plaintiffs paying the costs of this appeal.