GEORGE W. BROWN *et al.* v. THE JAMES H. CAMPBELL COMPANY.

REMOVAL *of Mortgaged Goods — Sale by Agent — Liability to Mortgagee.* A chattel mortgage was properly deposited in the office of the register of deeds, and was valid, and the mortgage debt was not paid although it had been due for some time, and the mortgagee never had the actual possession of the property.    The wife of the mortgagor; transported the property to another county, consigned it to and placed it in the possession of a commission merchant or broker for sale, who sold and delivered the same to others and paid over the proceeds of the sale to the consignor, the wife of the mortgagor, and all this was done without the knowledge or consent of the mortgagee, and without any actual knowledge on the part of the commission merchant or broker concerning the mortgage or the rights of the mortgagee.    *Held,* That as the mortgage was properly on file in the office of the register of deeds, and valid, the commission merchant or broker was bound to take notice of the same and of the rights of the mortgagee, and that by selling and delivering the property to others he made himself liable to the mortgagee as for a conversion of the property.

*Error from Wyandotte District Court.*

A SUFFICIENT statement of the facts is contained in the opinion. Judgment for the defendant *Company*, at the September term, 1889. The plaintiffs, *Brown Bros.*, bring the case to this court.

*Shinn & Yeager*, and *W. H. H. Freeman*, for plaintiffs in error.

*Alden & McGrew*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Wyandotte county by George W. Brown and C. W. Brown, partners as Brown Brothers, against the James H. Campbell Company, a corporation and a live-stock commission merchant, to recover from the defendant the sum of $1,400, with interest, for the alleged conversion of 45 head of neat cattle belonging to the plaintiffs as mortgagees. A trial was had before the court and a jury, and a judgment was rendered in favor of the defendant; and the plaintiffs, as plaintiffs in error, bring the case this court for review.

The principal facts of the case are substantially as follows: On September 27, 1888, C. J. Blanchard, who resided in Cowley county and who owned and possessed the cattle above mentioned, in that county, mortgaged the same, along with some other personal property, to the plaintiffs. The mortgage was executed to secure a debt of $2,050, $600 of the same to become due in thirty days, and the remainder thereof, $1,450, to become due in ninety days. The mortgage was deposited in the office of the register of deeds on the next day, to wit, September 28, 1888. There was no stipulation in the mortgage as to who should have the legal title or the possession of the mortgaged property, but the mortgagor was permitted to retain the possession thereof. The mortgaged property was not to be removed from Cowley county. The mortgage debt has never been paid. On February 12, 1889, without the

consent or knowledge of the plaintiffs, the cattle were transported by railroad from Cowley county to Kansas City, Wyandotte county, Kansas, in the name of M. A. Blanchard. This "M. A. Blanchard" was Martha A. Blanchard, the wife of C. J. Blanchard, the mortgagor. The cattle were consigned to and placed in the possession of the defendant, which, as aforesaid, is a corporation and a commission merchant or broker. On the next day, the defendant, in the ordinary course of business, sold and delivered the cattle in four different lots, to different purchasers, received the proceeds of the sale and paid the same, less commission, over to the consignor, M. A. Blanchard. All this was done without the consent or knowledge of the plaintiffs. The defendant at the time had no actual knowledge of the chattel mortgage, nor any knowledge that anyone except the consignor claimed to have any interest in the property. The case was tried in the court below upon the theory that the plaintiffs were negligent in not taking the possession of the cattle within a reasonable time after the mortgage debt became due, and that if the defendant sold the property and paid over the proceeds to the consignor innocently, without any knowledge of the plaintiff's claim, and only as a commission broker, it was not liable. For instance, the court gave, among others, the following instructions:

"If the jury find from the evidence that said defendant did not purchase the cattle in controversy and sell and dispose of the same as its own, but that said cattle were shipped by M. A. Blanchard to the defendant as live-stock commission merchants to be sold by said defendant as the agent for and on account of the said M. A. Blanchard, and the proceeds of said sale paid over by said defendant to the said M. A. Blanchard, in the ordinary course of business, without actual notice to said defendant of the rights or claim of said plaintiffs thereto, then said defendant is not guilty of a conversion of said cattle or their proceeds, and you will find for the defendant."

"If the jury find from the evidence that the plaintiffs permitted the mortgaged property described in the mortgage introduced in evidence in the case to remain in the possession

of the mortgagor for a considerable length of time after the conditions of the mortgage had been broken, and that by using reasonable diligence after default in the conditions of said mortgage, said plaintiffs could have obtained possession of said property and subjected the same in payment of the debt secured thereby, then I instruct that it was the duty of said plaintiffs so to do within a reasonable time; and if the plaintiffs failed to so take possession of said property and subject it to the payment of said indebtedness, within a reasonable time after default in the conditions of said mortgage, they were guilty of negligence, and cannot recover in this action, unless you find that the defendant had actual notice of the plaintiffs' mortgage, in which case you will find for plaintiffs."

The statutes in this state do not in express words enact that a chattel mortgage shall in any case be valid or shall in any case be notice to any person, but by the strongest of implications we think they enact that every chattel mortgage duly and honestly executed, and deposited in the office of the register of deeds, shall be valid, and shall be notice as to all the world for the period of one year unless the mortgage debt is sooner satisfied, and shall remain valid and notice as to all the world for each succeeding year, provided the mortgage debt remains unsatisfied, and provided a sufficient renewal affidavit is filed prior to the expiration of each succeeding year. (Mortgage Act, §§ 9, 11.) Our statutes also provide that "in the absence of stipulations to the contrary, the mortgagee of personal property shall have the legal title thereto, and the right of possession." (Mortgage Act, § 15.) In other words, where there are no stipulations to the contrary, the mortgagee is the owner of the mortgaged property, and has the right to the possession thereof from the execution of the mortgage until it is satisfied, or ceases to have validity, whether the debt is due or not, and there are no stipulations to the contrary in the present mortgage. Our statutes also provide that when a chattel mortgage is satisfied it shall be the duty of the holder thereof to enter satisfaction thereof of record, and if he fails to do so within thirty days after demand therefor, he is liable to pay a penalty for his failure of $100. (Mortgage Act,

§§ 8, 16.) It will therefore be seen that our statutes require that the existence of every chattel mortgage, and whether it is still valid and in force or not, shall be shown by the records in the office of the register of deeds.

The defendant claims that it is not liable in this action, for several reasons, among which are the following: It claims that it was not bound to take notice of the plaintiffs' mortgage although it was duly deposited in the office of the register of deeds, and it cites the case of *Frizzell v. Rundle,* decided by the supreme court of Tennessee, in January, 1890, (27 S. W. Rep. 918,) and also cites *Roach v. Turk,* 9 Heisk. (Tenn.) 708. This is certainly not the law in Kansas, for the implications of the statutes and of all the decisions of this court are certainly to the contrary, and that a chattel mortgage duly executed and on file in the office of the register of deeds is notice, as above stated, to all the world. The defendant also claims that the plaintiffs were negligent in not taking the possession of the mortgaged property immediately after the mortgage debt became due, and that for this reason the mortgage ceased to operate, and became void; and it cites the following cases from Montana and Illinois, to wit: *Travis v. McCormick,* 1 Mont. 148; *Reed v. Eames,* 19 Ill. 594; *Cass v. Perkins,* 23 id. 382; *Barbour v. White,* 37 id. 164; *Reese v. Mitchell,* 41 id. 365; *Hanford v. Obrecht,* 49 id. 146; *Wylder v. Crane,* 53 id. 490; *Lemen v. Robinson,* 59 id. 115; *Arnold v. Stock,* 81 id. 407; *Dunlap v. Callon,* 88 id. 82. This we think is also against the implications of our statutes, and against the views heretofore entertained by the entire bench and bar of this state, and is against the great weight of authority.

The defendant also claims that it is not liable, for the reason that it was only a mere agent or servant of the consignor, transferring the property from the consignor to the purchaser, and asserted no right, title or interest in or to the property with reference to itself; and it relies upon the cases heretofore and hereafter cited. Among its cases cited in support of this claim is the case of *Rogers v. Huie,* 2 Cal. 271, where it is held that an auctioneer selling stolen property in the regular

16 — 44 KAS.

course of his business, and paying over the proceeds to the felon without notice that the goods were stolen, is not liable. This decision we think is against all authority, and is not good law. See Mechem on Agency, § 915, and cases there cited.

The defendant also cites *Burditt v. Hunt*, 25 Me. 419, and *Leuthold v. Fairchild*, 35 Minn. 99, 100. These cases seem to enunciate the doctrine that a mere servant, agent or carrier who in good faith transports the goods from one place to another, or otherwise assists in disposing of the goods, without asserting or claiming any right, title or interest in himself, or any right to transfer any right, title or interest in the property to another, is not liable. This may be correct; but if so, then it will hardly apply to this case. A person can never be held liable for a conversion of personal property unless he claims or asserts some right, title or interest in himself or in another adverse to the interest of the owner.

The defendant also cites *Spooner v. Holmes*, 102 Mass. 503, which seems to decide that an innocent seller of certain stolen negotiable coupons payable to bearer, and which could be transferred by mere delivery, was not liable. For the purposes of this case this may be admitted to be good law, but it does not apply to this case. The case of *Kimball v. Billings*, 55 Me. 147, seems, however, to enunciate a different doctrine. The defendant also cites *Hathaway v. Brayman*, 42 N. Y. 322. In this case it was decided that a mortgagor of chattels in possession has a right before default to sell and deliver the mortgaged property *subject* to the mortgage. This we think is good law provided the mortgagor sells the property in good faith and without any intent to hinder, delay or defraud his creditors, and especially the owner of the mortgage debt. If the mortgagor, however, should sell the mortgaged property without reference to the mortgage debt, or with any intent to hinder, delay or defraud the holder of the mortgage, he would commit a criminal offense, and the sale would in all probability be void. (Gen. Stat. of 1889, ¶¶ 2233, 2452.)

The plaintiffs cite the following cases among others with

regard to the rights of mortgagees of chattels where innocent parties without the consent of the mortgagees have interfered or intermeddled with the mortgaged property: *Coles v. Clark,* 3 Cush. (Mass.) 399; *Spraights v. Hawley,* 39 N. Y. 441; *Moloughney v. Hegeman,* 9 Abb. N. C. 403; *Marks v. Robinson,* 82 Ala. 69; *Poole v. Adkisson,* 1 Dana, (Ky.) 110; *Nichols v. Barnes,* 3 Dak. 148; *Brewing Co. v. Elevator Co.,* 5 id. 62; *White v. Phelps,* 12 N. H. 382. The plaintiffs also cite the following among other cases which have no particular relation to chattel mortgages, but which assert the general principles regarding the liability of persons who as servants or agents of others interfere or meddle with property not belonging to their master or principal: *Barnhart v. Ford,* 37 Kas. 520; *Kimball v. Billings,* 55 Me. 147; *Koch v. Branch,* 44 Mo. 542; *McCormick v. Stevenson,* 13 Neb. 70. In the case of *Coles v. Clark,* supra, the syllabus reads as follows:

"Where the mortgagor of goods, of which the mortgagee had the right of immediate possession by a mortgage duly recorded, induced the mortgagee by false and fraudulent representations to allow the goods to remain in his possession for a certain period, during which the mortgagor, for the purpose of cheating and defrauding the mortgagee, sent the goods to an auctioneer, by whom they were sold and the proceeds paid over to the mortgagor, it was held that the mortgagee might maintain trover for the goods against the auctioneer, although the latter did not participate in the fraud of the mortgagor, and had no knowledge in fact of the existence of the mortgage."

In the case of *Spraights v. Hawley,* supra, a portion of the syllabus reads as follows:

"Where the mortgagor of chattels in possession thereof, after default in the payment of the mortgage debt, fraudulently delivered them to a third person for sale, representing that they were his property, and the third person as agent for the mortgagor, sells the chattels, such third person is liable to the mortgagee for the value thereof, notwithstanding he acted in good faith, believing that the chattels were the property of the mortgagor, and paid the proceeds of the sale, which he made, to the mortgagor without reward for his services."

In the case of *Marks v. Robinson,* supra, a portion of the syllabus reads as follows:

"A factor, or commission merchant, receiving and selling cotton for a mortgagor, without actual notice of the mortgage, is liable in trover to the mortgagee, if the mortgage has been properly recorded in the county in which the cotton was raised."

Mr. Jones, in his work on Chattel Mortgages, (3d ed., § 460,) uses the following language:

"An absolute sale of the mortgaged property by the mortgagor or anyone claiming under him, in exclusion of the rights of the mortgagee, is a conversion of it for which the mortgagee may maintain trover. This is upon the general principle that assuming to one's self the property and right of disposing of another's goods is a conversion. . . . If a mortgagor for the purpose of defrauding the mortgagee sends the mortgaged goods to an auctioneer, by whom they are sold and the proceeds paid over to the mortgagor, the mortgagee may maintain trover for the goods against the auctioneer, although the latter did not participate in the fraud, and had no knowledge of the existence of the mortgage. In such action the plaintiff need not show that the mortgagor is wholly irresponsible. An absolute sale of the mortgaged property by the mortgagor's assignee for the benefit of creditors is a conversion, and he is liable to an action of trover by the mortgagee."

Mr. Boone, in his work on Mortgages, (§ 260,) uses the following language:

"If a mortgagor of chattels, or anyone claiming under him, sells the entire property, as owner, in exclusion of the rights of the mortgagee, such sale is a conversion of the chattels, and the mortgagee may maintain trover therefor."

Mr. Mechem, in his work on Agency, (§ 915,) uses the following language:

"An auctioneer who receives and sells stolen property is liable to the true owner, as for a conversion, although he acted in good faith, and received the property in the usual course of trade.

"So an auctioneer would undoubtedly be liable as for a conversion who, having received property for sale from one

not having authority to cause it to be sold, proceeded to sell it or to pay over the proceeds after notice of the rights of the true owner, and without his authority; and it has been held that an auctioneer who in good faith received and sold property for one whom he supposed to have the right to direct the sale, but who in fact had no such right, was guilty of a conversion."

Judge Story, in his work on Agency, (§ 312,) uses the following language:

"*A fortiori*, if the principal is a wrong-doer, the agent, however innocent in intention, who participates in his acts, is a wrong-doer also.    Thus, if an auctioneer should be employed by a sheriff to sell goods at auction, which he had unlawfully seized upon an execution, and if the goods did not belong to the execution debtor, the auctioneer who should sell would be liable to an action for the tortious conversion, equally with the sheriff.    So, if the agent of a merchant who has received goods from a bankrupt after a secret act of bankruptcy, should, pursuant to orders from his principal, sell the goods, an action of trover would lie in favor of the assignees against the agent, however ignorant he might be of the defect of title; for a person is guilty of a conversion who intermeddles with the property of another, without due authority from the true owner; and it is no answer that he acted as an agent, under the authority of a person supposed at the time to be entitled as the owner."

Judge Cooley, in his work on Torts, (star page 451,) uses the following language:

"One who buys property must, at his peril, ascertain the ownership, and if he buys of one who has no authority to sell, his taking possession, in denial of the owner's right, is a conversion.    The vendor is equally liable, whether he sells the property as his own or as officer or agent; and so is the party for whom he acts, if he assists in or advises the sale. So it is no protection to one who has received property and disposed of it in the usual course of trade, that he did so in good faith, and in the belief that the person from whom he took it was owner, if in fact the possession of the latter was tortious."

Mr. Wait, in his work on Actions and Defenses, (vol. 6, p. 140,) uses the following language:

"Every person who aids or assists in the conversion of

property, whether with knowledge of the facts, or in ignorance thereof, is responsible to the owner for all the damages sustained by him."

In volume 4 of the American and English Encyclopædia of Law, (p. 108,) the following language is used:

"The action of trover is founded on the right of property and possession; and any act of a party, other than the owner, which militates against this conjoint right, in law is a conversion. It is not necessary for a manual taking to make conversion, nor that the party has applied it to his own use. The question is, does he exercise dominion over it in exclusion or in defiance of the owner's right? If he does, that is conversion, be it for his own or another's use. It is conversion if one takes the property of another and sells or otherwise disposes of it *without the owner's authority; or if he takes it* for a temporary purpose only, in disregard of the owner's right, it is conversion. The word conversion, by a long course of practice, has acquired a technical meaning, and means detaining goods so as to deprive the owner, or person entitled to possession of them, of his dominion over them. Any carrying away of a chattel for the use of one, without the owner's consent, or for a third party, amounts to a conversion, because it is inconsistent with the general right of dominion which the owner has in it, who is entitled to the use of it at all times and in all places. Such an asportation is conversion."

We think the defendant is liable. The mortgage was valid; it had been executed and deposited in the office of the register of deeds less than one year prior to the sale; the defendant was bound to take notice of the mortgage and of the plaintiffs' rights thereunder, and in law the plaintiffs were the owners of the property, and had the absolute right to the possession and the control thereof; the defendant sold and delivered this property to different persons, not under the mortgage or subject to the mortgage, but independent thereof, and as the absolute property of M. A. Blanchard, and attempted to give to the purchasers the absolute title thereto, and absolute control and dominion over the same. All this was in violation of the plain-

*Valid mortgage, duly filed; agent liable to mortgagee for conversion of property.*

tiffs' rights, and rendered the defendant liable to the plaintiffs as for a conversion of the property.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.