J. E. GREER *et al.* v. J. W. NEWLAND *et al.*

No. 13,677. (77 Pac. 98.)

SYLLABUS BY THE COURT.

CHATTEL MORTGAGE—*Constructive Notice—Commission Merchant Held Liable on an Implied Contract.* A commission merchant who receives mortgaged cattle sent to him for sale without the consent of the mortgagee, and in violation of the terms of the mortgage, and who sells them and pays the proceeds to the consignor without actual notice of the mortgage, but with constructive notice imparted through its record, is liable to the mortgagee in an action upon an implied contract to pay him the proceeds of the sale.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. First opinion filed June 11, 1904. Affirmed. Rehearing granted July 7, 1904. Second opinion filed December 1, 1904. Reversed.

*Muckle, Hayward & McLane,* for plaintiffs in error.

*Botsford, Deatherage & Young,* and *McFadden & Morris,* for defendants in error.

The opinion of the court was delivered by

MASON, J. : The owner of certain cattle in Wilson county executed chattel mortgages on them, securing two notes. The mortgages were properly recorded.

Greer v. Newland.

Afterward the mortgagor turned the cattle over to another person who, without the consent of the mortgagee, and in violation of the terms of the mortgage, shipped them to Greer, Mills & Co., commission merchants at East St. Louis, for sale. The commission merchants sold the cattle and remitted the proceeds, less charges and expenses, as directed by the consignor, without actual notice of the mortgages. The notes and mortgages remained unpaid and were transferred to J. W. Newland and D. R. Newland, who sued the commission merchants, not for damages resulting from the conversion of the cattle, but upon the allegation of an implied promise by them to pay to plaintiffs their net proceeds, the tort being expressly waived. Plaintiffs recovered a judgment which defendants seek to reverse.

Upon the facts stated it is clear that defendants would have been liable in an action for conversion, and the fact that they had no actual notice of the claim of the mortgagees would have constituted no defense. (*Brown v. Campbell*, 44 Kan. 237, 24 Pac. 492, 21 Am. St. Rep. 274.) But defendants claim that they were not liable in an action upon contract for the reason that in the transaction they acted only as the agents of the real wrong-doer, the person who shipped the cattle to them, and that their own estate was not intended to be benefited, and was not in fact benefited, by the sale—that they never acquired or claimed the beneficial title to the cattle or their proceeds. It is true that the rule is well established that "if no benefit accrues to the tort-feasor by reason of the tort committed, assumpsit will not lie. He cannot be charged as on an implied contract unless some benefit has actually accrued to him." (15 A. & E. Encycl. of L., 2d ed., 1115. See, also, ch. 3, Keen. *Quasi*-contr.,

and *Fanson v. Linsley*, 20 Kan. 235, and cases cited.) It is also true that the title of property consigned by the owner to a commission merchant for sale, and of its proceeds, is in the consignor, and no title vests in the factor except as trustee. (12 A. & E. Encycl. of L., 2d ed., 695, 696.)

In considering whether these principles protect the defendants from an action upon an implied contract to pay the mortgagee the price of the cattle, it must be borne in mind that no distinction is to be made between an actual knowledge by the consignee that goods sent to him belong to another than the shipper and the constructive knowledge of that fact given him by the public records. The effect of the notice imparted by the record does not depend upon the form of action. In the case cited it was held equivalent to actual notice in an action for conversion; it is so in an action upon an implied contract. The case must therefore be treated as though defendant had had actual notice of the existence of the mortgages.

If a factor, while still holding the proceeds of goods sold by him, knows they were stolen, he cannot assert, as a protection against the claims of the real owner, what is untrue in fact, that the title is in the one who has stolen them; and, having in his hands money belonging to another, in the absence of a reason to justify his holding it himself or making some other disposition of it he is liable to the owner upon an implied contract to pay it to him.

"Where the defendant is proved to have in his hands the money of the plaintiff, which, *ex æquo et bono*, he ought to refund, the law conclusively presumes that he has promised so to do. . . . The count for *money had and received*, which in its spirit and objects has been likened to a bill in equity, may, in general, be proved by any legal evidence, showing that the

defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff. . . . And where the defendant has tortiously taken the plaintiff's property and sold it, or being lawfully possessed of it, has wrongfully sold it, the owner may, ordinarily, *waive the tort,* and recover the proceeds of the sale under this count. So, if the money of the plaintiff has in any other manner come to the defendant's hands, for which he would be chargeable in tort, the plaintiff may waive the tort, and bring assumpsit upon the common counts." (2 Green. Ev. §§ 102, 117, 120.)

"Where money has been paid to a factor for the use of the principal, to which the latter is discovered afterwards not to be entitled, the factor will be liable to an action at the suit of the person from whom he received such money, as for money had and received to his use, unless he has, before action brought, actually paid over the money to his principal." (*Weld v. Shaw,* 2 La. Ann. 559.)

He who holds money that he knows belongs to one person cannot voluntarily pay it to another and claim exemption from contractual liability on the ground that he acted merely as an agent and derived no personal benefit from the transaction. When he knows who is entitled to receive the money in his hands he owes that person a duty from which the law implies a contract to pay it to him, and he can no more escape that liability, or alter the character of it, by a payment to the person from whom he received it than by making any other disposition of it. The case of *Hindmarch v. Hoffman,* 127 Pa. St. 284, 18 Atl. 14, 4 L. R. A. 368, 14 Am. St. Rep. 842, was an action of assumpsit, and it was there said:

"As found by the learned judge, the money sued for as money had and received by defendant to the use of plaintiff, never belonged to Savanack, nor

could he have legally recovered any part of it. On the contrary, it was plaintiff's money, stolen from him by Savanack, and by the latter left with the defendant. While it was thus in his custody and under his control, he was fully informed of the theft, and also that plaintiff, as owner of the money, claimed it. Under these circumstances, it was clearly his duty to hold it for plaintiff, and, upon satisfactory proof of ownership, to pay it over to him. From the existence of that duty the law raised an implied promise by defendant to do so, but, in disregard of his duty in the premises, he paid it over, on the order of the thief, to parties who had no right whatever to receive it. Justice demands that he should now be compelled to pay the amount to the rightful owner, and there is no good reason why it should not be recovered in the present form of action."

"Where a factor is notified that cotton consigned to him by a third person was made on plaintiffs' plantation and belongs to them, and is directed not to pay over the proceeds without their consent, the notice will render the factor liable for any subsequent payment made to the consignor, not depending on a superior right." (*Ledoux v. Anderson*, 2 La. Ann. 558.)

The situation is substantially the same as though cattle belonging to plaintiffs had been stolen and shipped to defendants for sale, and defendants had sold them and paid the proceeds to the consignor after learning of the theft. In such a case the defendants could say with as much force as they do now that they derived no personal benefit from the transaction —that their estate was not benefited by it; but under such circumstances this statement would not be a sufficient answer to plaintiffs' claim upon the implied contract to pay the money to the real owner; nor is it here.

The judgment is affirmed.

All the Justices concurring.

OPINION ON REHEARING.

· (78 Pac. 835.)

SYLLABUS BY THE COURT.

1. CHATTEL MORTGAGE—*Commission Merchants, without Notice, Held Not Liable on Implied Contract.* A commission merchant who receives mortgaged cattle sent to him for sale without the knowledge or consent of the mortgagee, and in violation of the terms of the mortgage, and who sells them and pays the proceeds, less his commission, to the consignor, without notice of the mortgage, does not derive such a benefit from the transaction as to authorize the mortgagee to waive the tort and recover in an action upon an implied contract.

2. ———— *Record Held Not to Impart Constructive Notice.* The filing of a chattel mortgage for record does not impart constructive notice to a commission merchant to whom the mortgaged property is sent for sale and who sells it and pays the proceeds, less his commission, to his consignor.

The opinion of the court was delivered by

MASON, J. : This case involves the question whether commission merchants who receive mortgaged personal property sent to them for sale without the knowledge or consent of the mortgagee, and in violation of the terms of the mortgage, and who sell it and pay the proceeds, less their commission, to the consignor, without actual notice of the mortgage, which is properly of record, are liable to the mortgagee in an action upon an implied contract, the tort being waived. Upon a former hearing it was held that they derived no such benefit from the act of conversion as to make them liable in assumpsit by reason thereof, but that, under the authority of *Brown v. Campbell*, 44 Kan. 237, 24 Pac. 492, 21 Am. St. Rep. 274, the record operated to give them constructive notice of the mortgage, and that this had the same effect as actual notice, and rendered them liable as upon contract for their failure to pay the proceeds of the property to the real owner. A grave doubt as to the

correctness of this view of the effect of the record led to the granting of a rehearing.

Upon fuller consideration, we are convinced that all that is said in the case cited regarding the notice imparted by the record of the mortgage is *dictum*. The action was for conversion, the facts being substantially the same as in this case. There, as here, the consignor was an apparent stranger, whose possession was not clearly accounted for. It was held :

"As the mortgage was properly on file in the office of the register of deeds, and valid, the commission merchant or broker was bound to take notice of the same and of the rights of the mortgagee, and that by selling and delivering the property to others he had made himself liable to the mortgagee as for a conversion of the property."

The weight of authority sustains the statement made in volume 4 of the Cyclopedia of Law and Procedure, at page 1055, which applies to a factor :

"An auctioneer who sells property for one who has no title and pays over to his principal the proceeds is liable to the real owner for the conversion, even though such auctioneer acts in good faith, and without knowledge of the defect of title."

(See, also, 3 A. & E. Encycl. of L., 2d ed., 497, and cases cited ; *Flannery v. Harley*, 117 Ga. 483, 43 S. E. 765 ; *Miller v. Wilson*, 98 id. 567, 25 S. E. 578, 58 Am. St. Rep. 319 ; *Johnson v. Martin*, 87 Minn. 370, 92 N. W. 221, 59 L. R. A. 733, 94 Am. St. Rep 706 ; *Dolliff v. Robbins*, 83 id. 498, 86 N. W. 772, 85 Am. St. Rep. 466 ; *Moore v. Hill*, 38 Fed. [C. C.] 330.)

(To the contrary, see 12 A. & E. Encycl. of L., 2d ed., 691.)

In most of the cases cited in support of this proposition, but not in all, the property involved came by theft, or some other wrong, into the hands of the per-

son who delivered it to the factor, and a distinction is sometimes sought to be drawn based upon this consideration. But no reason is apparent why the rights of the owner should be affected by the character of the possession of the consignor, so long as he has no right to sell, and the owner is not estopped to deny such right. The decision in *Brown v. Campbell, supra,* must therefore have been the same even if the mortgage had not been of record, unless the failure to record it would have made it void as to the defendant. Indeed, what was said in the opinion with reference to the notice imparted by the record was chiefly in response to the contention that the mortgage was void, and in effect was merely an argument that it was not invalid for want of notice.

Whether a factor to whom mortgaged property is consigned for sale, who sells it and accounts to the consignor for the proceeds, is charged with notice of the record of the mortgage depends wholly upon the statute. In the absence of a statute the recording of a chattel mortgage would be notice to no one, but the mortgage would be good as to every one with notice. It has been enacted, however (Gen. Stat. 1901, § 4244), that an unrecorded mortgage "shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith." The factor is neither a creditor of the mortgagor nor a subseqent purchaser or mortgagee, and, therefore, is not within the protection of the statute. As to him the mortgage is equally effective, whether of record or not. (*Drumm v. Bank,* 65 Kan. 746, 70 Pac. 874.) It follows that he is not affected with notice of the filing of the mortgage, for "the record imparts constructive notice to such persons only as would have been entitled to protection against

the conveyance in case it had not been recorded.'' (24 A. & E. Encycl. of L., 2d ed., 146.)

It is strongly urged in behalf of plaintiffs in error (the commission merchants) that, even conceding that the record charged them with constructive notice of the mortgage, this would not render them liable as upon contract; that only actual notice would have that effect. As we hold that the record did not impart notice it is unnecessary to decide this question now, but that it may be left open for a full inquiry and determination as it may hereafter arise, the statement in the original opinion that no distinction is to be made in this regard between actual and constructive notice is withdrawn.

As the estate of the plaintiffs in error was not benefited by their tort, and as they paid over the proceeds of the sale of the property without notice of the rights of the real owner, they could not be held liable in an action upon contract.

The judgment is reversed, and the cause remanded for further proceedings in accordance herewith.

All the Justices concurring.