No. 22,282.

THE TORONTO STATE BANK, *Appellee*, V. ALBERT KASH, *Appellant*.

SYLLABUS BY THE COURT.

CHATTEL MORTGAGES—*Residence of Mortgagor—Findings of Trial Court Conclusive.* On conflicting evidence, the trial court determined that the residence of a chattel mortgagor was in Greenwood county. That determination is conclusive in this court.

Appeal from Woodson district court; OSCAR FOUST, judge. Opinion filed May 8, 1920. Affirmed.

*G. H. Lamb*, and *W. E. Hogueland*, both of Yates Center, for the appellant.

*S. C. Holmes*, and *S. C. Holcomb*, both of Yates Center, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff, under two chattel mortgages given to it by F. P. Wilson, recovered a judgment in replevin against the defendant for two mares. The defendant appeals. The mares had been sold to him by F. P. Wilson.

But one question is presented, and that is: Were the mortgages recorded in the proper county at the time the defendant purchased the mares? To answer this question, the residence of F. P. Wilson, the mortgagor, at the time he executed the mortgages and at the time he sold the mares, should be ascertained. One of the mortgages, for $194.94, on one of the mares, was dated June 23, 1916, and the other one, for $87.75, on the other mare, was dated February 9, 1916. Both were recorded in Greenwood county on October 24, 1916. Each mortgage commenced with the following language: "The undersigned, of Greenwood county, Kansas." These mort-

gages were introduced in evidence. The mares were sold to the defendant in Woodson county on October 27, 1916.

Additional evidence on the question of the place of residence of F. P. Wilson was substantially as follows:

By Frank Wilhite:

"Q. Where did Mr. Wilson live at the time your bank—at the time you mention? Ans. In Greenwood county with his brother Bill Wilson."

By A. L. Cable:

"Q. Now, Mr. Cable, had you been acquainted with Mr. Wilson, Mr. Cable? A. The first time I met him was September 30, 1915.

"Q. Where did he live? A. Quincy Road; he lived on the Quincy Road.

"Q. What county? A. Greenwood county.

"Q. Did you ever give him permission to remove this team from Greenwood county? A. No, sir."

By W. S. Wilson:

"Q. Did you—Where did your brother live prior to making this mortgage? A. Prior to making this mortgage?

"Q. Yes; did he live with you or not? A. When he first got this horse he was living with me, yes, sir. The mares I saw at Kash's are the identical mares my brother had and are the only mares he ever had.

"Q. Your brother made his home there with you, did he? A. Yes, sir.

"Q. In Greenwood county? A. Yes, sir.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"My brother came to Woodson county on or about July 10, 1916. He brought the team of mares with him, on the hay baler. He came over temporarily. I believe he was baling hay for Metlove and that he baled about 200 acres of grass."

By Joe Sowder:

"My name is Joe Sowder. I live in Greenwood county, 6 miles west of Toronto. I know F. P. Wilson. He lived in Greenwood county at Quincy."

By the defendant:

"I got acquainted with F. P. Wilson in the fall of 1916, I bought his mares of him October 27, 1916. I got them out on his place in Woodson county. Wilson was running a restaurant and garage in Yates Center when I bought the mares."

The record of the registration of F. P. Wilson as a voter was also introduced in evidence. That record showed that on April 27, 1916, F. P. Wilson was thirty-nine years old, was

a merchant, and that his residence was on lot 9 in block 30 in Yates Center, in Woodson county. That was strong evidence of his residence in Woodson county, but it was not conclusive. (*Mercantile Co. v. Blanc,* 79 Kan. 356, 99 Pac. 601.).

The cause was tried by the court without a jury. There were no special findings of fact, except as follows:

"The court, after duly considering the evidence, pleadings, and briefs of counsel, and being fully advised in the premises, finds the issues in favor of the plaintiff and against the defendant; finds that at the time of the commencement of the pending action the plaintiff had a special ownership in and to the two (2) black mares described in its, plaintiff's petition filed herein, and that it, plaintiff, was then and now is entitled to the immediate possession of said mares; and that the possession of such mares was wrongfully withheld from plaintiff by the defendant; that the value of its, plaintiff's, special ownership is the amount of the two (2) promissory notes secured by chattel mortgage, to-wit, the sum of $273.69, with interest on such notes, as is set forth in petition of plaintiff; that the value of the two mares in controversy is $250."

If Greenwood county was the residence of F. P. Wilson at the time he gave the mortgages and at the time the property was sold to the defendant, the mortgages were recorded in the proper county. (Gen. Stat. 1915, § 6495.) On the evidence, the court could reasonably conclude that the residence of F. P. Wilson was at both of these times in Greenwood county, but the conclusion could have been reached that his residence was in Woodson county from and after April 27, 1916. The court must have determined that the residence was in Greenwood county during all of the period covered by the times named. That determination was supported by evidence, and it follows that the mortgages were properly recorded in that county, and covered the property at the time it was sold to the defendant in Woodson county. *Brown v. Campbell,* 44 Kan. 237, 24 Pac. 492, and *Greer v. Newland,* 70 Kan. 310, 318, 77 Pac. 98, support the latter conclusion. (See, also, 5 R. C. L. 400; 11 C. J. 530; Jones on Chattel Mortgages, 5th ed., § 260.) It is only fair to say, however, that the defendant does not argue that he should retain the property if the chattel mortgages were recorded in the proper county.

The judgment is affirmed.