**WALTERS et al. v. SLIMMER et al.**

(Circuit Court of Appeals, Seventh Circuit. March 4, 1921.)

No. 2761.

1. **Chattel mortgages** ☞225(2)—**Purchaser of mortgaged property liable to mortgagee notwithstanding prior authorized sales of other mortgaged property.**

   The fact that a mortgagor had previously sold mortgaged property without the mortgagees' consent and paid the mortgages from the proceeds *held* not available as a defense to an action for conversion against the purchaser of other mortgaged property sold without plaintiffs' consent or knowledge, especially where defendants had no knowledge of such prior transactions.

2. **Appeal and error** ☞173(6)—**Objection to acknowledgment of instrument cannot be first raised in appellate court.**

   An objection to the sufficiency of the acknowledgment of an instrument must be raised in the trial court, and is not available when raised for the first time in the appellate court.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

·3. Chattel mortgages ☞217—Lien follows property into another state.

The lien of a chattel mortgage, valid in the state where the property is located, follows the property into another state, to which it has been taken without the mortgagee's consent.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action at law by Abraham Slimmer and Lane G. Thomas, partners as Slimmer & Thomas, against Arthur A. Walters, Charles A. Dunbar, and James H. Dunbar, partners as Walters & Dunbar. Judgment for plaintiffs, and defendants bring error. Affirmed.

This is a writ of error sued out to reverse a judgment rendered against the plaintiffs in error, hereinafter called the defendants, for the sale value of 74 head of steers, which they had sold for the account of John H. Jahn. It appears that on September 9, 1915, Jahn purchased of the defendants in error, hereinafter referred to as plaintiffs, a large number of steers at plaintiffs' yards in South St. Paul, Minn., where the plaintiffs were engaged in the cattle business. Jahn made no cash payment upon the purchase price, but executed therefor his promissory notes, in the execution of which his wife joined. To secure these promissory notes, Jahn executed, acknowledged, and delivered to the plaintiffs his chattel mortgages, one of which recites that 28 head of steers, branded with the letter "T" on the left hip, were, at the time of the execution of the mortgages covering them, in the Union Stockyards at South St. Paul, Minn., and were that day to be shipped to Brownsville, Minn., while the other mortgage made the same recital as to possession, describing the steers, and providing that 56 head of them were that day to be shipped to Gladbrook, Iowa, and thereafter kept on purchaser's farm adjoining the town; 62 head were to be shipped to Garwin, Iowa, and 28 head to Tama, Iowa, and kept on other of the purchaser's farms in Tama County, Iowa. The chattel mortgages were duly acknowledged before a notary public and filed for record with the recorder of deeds of the counties in the states of Iowa and Minnesota into which the cattle were shipped.

After the various shipments of cattle contemplated and recited in the mortgages and their arrival at the several destinations, on September 28, 1915, Jahn, claiming that his supply of feed had been destroyed by a flood, shipped 47 of the 56 head of steers covered by the chattel mortgage which were on his farm near Gladbrook, Iowa, to the stockyards in Chicago, consigned to the commission firm of defendants, Walters & Dunbar. They sold the steers on the 29th of September for $3,648.24, and made settlement with Jahn therefor. On October 26th, Jahn shipped from his farm at Brownsville, Minn., 27 head of the mortgaged steers, to the same place, and consigned to the defendants. On October 27th, defendants wired plaintiffs, asking whether they had any mortgage on Jahn's cattle in Chicago that day. Plaintiffs answered: "Yes, we have a mortgage on all John H. Jahn's cattle; send proceeds here." Later, plaintiffs wired defendants inquiring the number of cattle sold by Jahn, and they replied, on November 2d, "One car, twenty-seven head." The record is silent as to why defendants felt called upon to make the telegraph inquiry as to the rights of plaintiffs in the cattle, unless it was by reason of the statement of Jahn, who was in Chicago at the time of the sale of the cattle September 29th, that he (meaning Dunbar) "asked me whether they were Slimmer & Thomas' cattle." And yet it was stipulated upon the trial that the defendants had no actual knowledge of the making, acknowledgment, or recording of the chattel mortgages covering the cattle. Plaintiffs had no knowledge that Jahn had shipped any of the mortgaged cattle to Chicago, did not authorize him to ship them, and had no actual knowledge that the mortgaged property was being offered for sale, until advised by defendants' telegram of inquiry.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Upon the trial, at the conclusion of the evidence, the court directed a verdict for the plaintiff for the sum of $5,969.43 and entered judgment thereon. Defendants rely upon six assignments of error:

(1) The court refused to admit evidence, offered by the defendants, showing a previous course of dealings between the mortgagor and mortgagees, in reason of which it was claimed, it would require the submission to the jury of the question as to whether or not plaintiffs had either waived their rights under the chattel mortgage or were estopped to assert them.

(2) That the court refused to admit evidence offered by defendants tending to show that the cattle sold by them did not bear the distinguishing marks of the cattle described in the chattel mortgage, and, making it a question of fact for the jury as to whether or not the cattle sold were the cattle described in the chattel mortgage.

(3) The court erred in holding that defendants had constructive notice of the Iowa chattel mortgage, because it was not executed, acknowledged and recorded in conformity with the laws of the state of Iowa, in that no certificate of authority of the notary public, before whom it was acknowledged, was attached; that (4) the court erred in directing a verdict (5) overruling defendants' motion for a new trial, and (6) entering judgment upon the verdict.

Walter H. Jacobs, of Chicago, Ill., for plaintiffs in error.
Walter Bachrach, of Chicago, Ill., for defendants in error.

Before BAKER and ALSCHULER, Circuit Judges, and FITZHENRY, District Judge.

FITZHENRY, District Judge (after stating the facts as above). [1] The evidence offered, but excluded, of which the defendants complain of being denied the benefit, referred to the financial irresponsibility of Jahn and numerous real estate transactions in which the mortgagor had been engaged through a number of prior years, and previous dealings between the plaintiffs and Jahn. The financial ability or irresponsibility of a mortgagor, where it is clear the mortgagees relied upon the mortgage security, was clearly immaterial and the production of this testimony was an effort to bring to the attention of the jury incompetent evidence. The dealings between Jahn and the plaintiffs, which the excluded testimony disclosed, covered two previous transactions where Jahn had purchased cattle from the plaintiffs, giving a mortgage in each case to secure the purchase price, and in which he had upon each occasion later shipped the mortgaged property to the defendants. They sold it, settlements were made with Jahn, who, in turn, paid the amount of the first mortgage in full and made a partial payment on the second. The first of these transactions was in April, 1913; the second one took place in July, 1914, 14 months before the transaction in question. Jahn claimed that he sold the mortgaged property in all three instances through ignorance, and no attempt was made to show that the defendants had any knowledge whatever, at the time of the sale in September, 1915, of any previous course of dealings or individual transactions between Jahn and the plaintiffs that would operate as a waiver of plaintiffs' rights as mortgagees or that would estop them from asserting any legal right which they possessed. The previous conduct of the mortgagor in selling the property and applying the proceeds to the payment of the mortgage debt could avail a third person nothing, where the mortgagor sold the property without the consent of the mortgagee and failed to apply the

proceeds of the sale to the mortgage debt, and this is especially true where the third person was not aware of any previous conduct on the part of the mortgagor at the time the rights of the third person intervened. 11 Corpus Juris, p. 636, § 349.

The second assignment relied upon is without merit here, for the reason that at the time of the taking of the depositions in this case, counsel for plaintiffs had stated at the conclusion of the examination of several witnesses: "We have other witnesses outside who can testify to the loading of the cattle, etc." Whereupon counsel for defendants said: "Their testimony will not be necessary." The District Court certainly was warranted in accepting the stipulation as a waiver of identification.

[2] The contention that the defendants had no constructive notice of the chattel mortgage covering the shipment of cattle from Gladbrook, Iowa, for the reason that the mortgage covering the shipment was not executed, acknowledged, and recorded in conformity with the laws of the state of Iowa, for want of the notary's certificate of authority, is raised for the first time in this court. The technical sufficiency of the chattel mortgages was not questioned upon the trial. Just before the conclusion of the evidence, defendants offered to prove that they had no actual knowledge of the making, acknowledgment, or recording of the chattel mortgages mentioned in plaintiffs' declaration, which fact was readily admitted, whereupon the court stated to counsel for defendants that, unless some other reason were shown, a directed verdict for the plaintiffs would be ordered. If the defendants wished to avail themselves of the defense of a lack of constructive notice for the reason assigned, the court certainly gave them an opportunity to offer it and have it considered, but no offer nor suggestion of this character of defense was made. An objection to the acknowledgment of an instrument must be raised in the trial court, and is not available for the first time upon appeal or error. 1 Corpus Juris, p. 771, § 48.

[3] No question being made upon the validity of the Iowa mortgage, it comes clearly within the rule of comity, and was a lien upon the chattels it covered when they were brought into the state of Illinois. Hoyt v. Zibell, 259 Fed. 187, 170 C. C. A. 254; Shapard et al. v. Hynes et al., 104 Fed. 449, 45 C. C. A. 271, 52 L. R. A. 675.

In the view we take of the first, second, and third assignments, the court properly directed a verdict and entered judgment thereon.

The denial of the motion for a new trial was a matter purely in the discretion of the trial court, which is not subject to review.

Judgment affirmed.