DROVERS' CATTLE LOAN & INVESTMENT CO. v. RICE et al.

(District Court, N. D. Iowa. W. D. January 15, 1926.)

No. 434.

1. Chattel mortgages ⟨⟩150(1)—Filing of chattel mortgage held not notice to commission merchants to whom mortgaged cattle were consigned by mortgagor for sale.

Under Rev. Code, S. D. 1919, § 1584, declaring that filing of chattel mortgage "operates as notice thereof to all subsequent purchasers and incumbrancers," filing of mortgage on cattle *held* not notice to commission merchants who, in good faith and without actual notice of mortgagee's rights, received, sold, and accounted to mortgagor for proceeds of cattle, which mortgagor, while rightfully in possession under mortgage before ·condition broken, consigned to them for sale.

2. Accord, and satisfaction ⟨⟩26(3)—Chattel mortgages ⟨⟩177(5)—Acceptance of substituted security after learning of unauthorized shipment of mortgaged cattle to commission merchants sued for conversion held established.

Evidence *held* to show that agent of mortgagee accepted substituted security after learning of mortgagor's unauthorized shipment of mortgaged cattle to commission merchants for sale and account, thus working an accord and satisfaction and waiving conversion by commission merchants making sale.

At Law. Action by the Drovers' Cattle Loan & Investment Company against O. A. Rice and others as copartners doing business under the firm name and style of Rice Bros. Judgment of dismissal.

Burgess & Gill, of Sioux City, Iowa, for plaintiff.

Farr, Brackney & Farr, of Sioux City, Iowa, and C. G. Myers, of Chicago, Ill., for defendants.

SCOTT, District Judge. This is an action commenced by Drovers' Cattle Loan & Investment Company, a Minnesota corporation, on May 7, 1923, against O. A. Rice, J. J. Donohue, and W. J. Downey, as copartners, doing business under the firm name and style of Rice Bros., said O. A. Rice being a resident and citizen of the state of Illinois, and said J. J. Donohue and W. J. Downey being residents and citizens of the state of Iowa, to recover $6,199.44 damages for the conversion of 192 head of cattle, upon which plaintiff alleged it held chattel· mortgages. All of the jurisdictional facts were admitted by defendants. Plaintiff's petition contained three counts, the first two of which at the close of the evidence were dismissed by the plaintiff, leaving only the cause of action stated in the third count here for determination, which on the pleading involves the sum of $2,877.60.

Plaintiff alleges and the court finds that on or about April 25, 1922, one Carl E. Tallmadge, of the town of New England, county of Hettinger, and state of North Dakota, executed and delivered to plaintiff his promissory note for the sum of $14,002.83, due October 20, 1922; that said note was a renewal of a previous note dated October 22, 1921, for $13,318.42, the difference in amounts of said notes being accrued interest on the former note; that to secure the payment of said note of $14,002.83, said Tallmadge on the date thereof executed and delivered to plaintiff his chattel mortgage covering 642 head of cattle, all branded T on the right ribs, and located on the T ranch in Slope county, N. D., and Corson county, S. D.; that the original note had also been secured by chattel mortgage on 642 head of cattle likewise located, and being the same general herd, and both mortgages covering all of the cattle owned by said Tallmadge on said ranch.

The court further finds that on the 5th day of August, 1922, and at all times thereafter material to this controversy, said notes and mortgages were in the possession and ownership of the plaintiff, and said latter note unpaid, and the original note and mortgage retained as so-called "collateral security."

The court further finds that both of said mortgages were, at all times material to this case, duly filed with the register of deeds of Slope county, N. D., and Corson county, S. D.; that is to say, the original in one county and a duly and legally certified copy in the other county.

The court further finds that said herd of cattle had been, with mutations not material to this controversy, owned by said Tallmadge and kept on said ranch during the years 1920, 1921, and 1922, and that taxes had been levied in Corson county, S. D., upon the personal property of said Tallmadge during said three years; that shortly prior to the 5th day of August, 1922, a distress warrant was duly issued by the county treasurer of Corson county to the sheriff thereof, and said sheriff levied upon the cattle in controversy here for the purpose of making collection of personal taxes owing by said Tallmadge in the sum of $1,072.31; that in lieu of enforcing said levy by notice and sale in the usual way as provided by the statutes of South Dakota, said Tallmadge and the sheriff of Corson county arranged, stipulated, and agreed that

74 head of cattle should be shipped to the Sioux City, Iowa, stockyards and there sold upon the open market, and the proceeds thereof, so far as necessary, used to liquidate said tax warrant; that about the 5th day of August, 1922, said Carl E. Tallmadge loaded said 74 head of cattle at the town of Wakpala, S.D., upon cars of the Chicago, Milwaukee & St. Paul Railway Company, and consigned the same to the defendants, commission merchants at the Sioux City Stockyards, for sale and account; that said shipments proceeded in the usual course, and said cattle were received by defendants about the 7th day of August, 1922, and were sold upon the open market, freight, yardage, and other expenses of shipment were paid by the defendants, and their commission of $48 deducted. The gross proceeds of the sale were $2,877.-60. The net proceeds were $2,582.02. Upon the order of said Carl E. Tallmadge, the total amount of said proceeds were disbursed by the defendants; said amount of $1,072.31 being paid to the sheriff of Corson county to liquidate said tax lien.

The court further finds that said shipment of cattle was without the knowledge or consent, express or implied, of the plaintiff.

The court further finds: That almost immediately after this sale plaintiff sent its agent and representative, one Schwartz, to the Tallmadge range to check up its securities; that about the 10th of August, 1922, Schwartz inspected the cattle at the South Dakota ranch near McLaughlin, S. D., and testifies that he found about 70 head of cattle remaining. That after such inspection he went across the line to New England, N. D., and inspected the balance of the cattle, and testifies he found 135 head of cattle. Schwartz, representing the plaintiff, thereupon returned to Tallmadge's office at New England, and had conversations and transacted some business with Tallmadge on the subject. There is a controversy between defendants' witness Miss May C. Koenig and J. H. Anderson, and the plaintiff's witness Schwartz, as to what occurred at this time and place. The substance of the testimony of Miss Koenig and Mr. Anderson, witnesses for the defendants, is that Schwartz came into the office and in conversation with Tallmadge asked him for security and settlement for the cattle recently shipped to Sioux City upon which the plaintiff held a mortgage. That thereupon Tallmadge asked Miss Koenig to get the account of sale out of the files, and she did so. And after two conversations and considerable negotiations Tallmadge gave

Schwartz, for the plaintiff, a sheriff's certificate of sale for a tract of land, and he and his wife executed deeds for other lands and delivered them to Schwartz. That Schwartz assured Tallmadge that this was satisfactory and that his principals would be satisfied with this substituted security. Schwartz as a witness for plaintiff denies this, and claims that he did not know of the Sioux City shipment until after the transaction with Tallmadge. That Tallmadge's employees had represented that the cattle had winterkilled, and that in substance he was merely taking additional security. Schwartz, however, does admit that he learned of the shipment later the same day. Schwartz returned to South St. Paul, Minn., with his securities, which were retained, and no further controversy indulged in until after Tallmadge's death in the spring of 1923. Plaintiff did, however, promptly after this transaction, which took place during the dates 17th, 18th, and 19th of September, 1922, proceed to foreclose its mortgage upon the balance of the herd, and there appears an indorsement upon the note declared on in said third count in the sum of $4,480.01. Later it appears that plaintiff failed to successfully realize on the securities. About that time there was great depreciation in lands. After Tallmadge's death in the spring of 1923, plaintiff sent Schwartz to Sioux City to interview defendants and make demand for the value of the cattle in controversy, and following defendants' refusal this suit was instituted.

The defendants filed a very voluminous answer, but, so far as is material to the controversy as it now stands, but three defenses are necessary to be considered:

(1) Defendants first claim that they are not liable because they received the cattle from the owner merely as commission merchants, without notice actual or constructive of the mortgage, sold them in good faith, and accounted to the owner for the proceeds.

(2) That the shipments were made with the consent both express and implied of the plaintiff.

(3) That there was an accord and satisfaction; that is, that plaintiff after it obtained knowledge of the shipment, through its agent Schwartz, adjusted and satisfied any cause of action for the tort by accepting substituted security in settlement.

[1] Upon defendants' first above contention, they point out: That the statute of South Dakota, section 1584, Revised Code of 1919, provides: "The filing of a mortgage of personal property, in conformity to the provi-

sions of this article, operates as notice thereof to all subsequent purchasers and incumbrancers of so much of said property as is at the time mentioned in the preceding section situated in the county or counties wherein such mortgage or authenticated copy thereof is filed." That defendants are neither subsequent purchasers or incumbrancers, and not within the terms of this statute, and therefore have no constructive notice, and inasmuch as the evidence shows no actual notice, that they are protected. Counsel upon neither side have been able to furnish very satisfactory authority upon the specific question presented. Counsel for plaintiff cite Greer v. Newland, 70 Kan. 310, 77 P. 98, 70 L. R. A. 554, 109 Am. St. Rep. 424; Id., 70 Kan. 315, 78 P. 835, 70 L. R. A. 554, 109 Am. St. Rep. 424. This case comments upon Brown v. Campbell, 44 Kan. 237, 24 P. 492, 21 Am. St. Rep. 274. The review of the latter mentioned case by the opinion in the former case is interesting, but, with all due respect, not very convincing. In Brown v. Campbell, the decision seems to rest upon constructive notice by the record, and I am not convinced that what was said in that case was obiter, as indicated in Greer v. Newland. On the contrary, it seems to me that what was said on the point in Greer v. Newland was obiter, in view of the fact that that case was brought upon contract and not for damages for a conversion. Counsel for defendants urge the case of Frizzell v. Rundle & Co., 88 Tenn. 396, 12 S. W. 918, 17 Am. St. Rep. 908. It seems to me this case declares a rule more logical and sound than the Kansas Case.

Many other cases are cited, but practically all cases cited purport to turn upon notice, and in nearly all the statute of the state in question is held to be broad enough to include third parties without distinction. The case of Walters v. Slimmer, 272 F. 435, by the Circuit Court of Appeals of the Seventh Circuit, depended upon the Iowa statute, and while comment in the opinion is meager, the fact remains that the Iowa statute, section 10020, Code of 1924 (section 2908, Code of 1897), provides that the filing for record shall "have the same effect as though it had been accompanied by the actual delivery of the property sold or mortgaged."

Some cases cited proceed upon the theory that a mortgagor in possession, who sells the property, assumes the attitude of a thief, and that any one meddling with the property in connection with the mortgagor assumes the same liability as though dealing with a thief. This principle, of course, ignores as wholly immaterial all question of notice. I think the rule which applies to one dealing with a thief should not apply to an innocent person dealing directly with the owner rightfully in possession and without notice. The mortgage in question in this case gave the mortgagor right to possession until condition broken, and no condition is shown to have been broken until the very act in controversy, with respect to which the defendants are alleged to have participated.

I therefore find that defendants received and sold the cattle and accounted to the mortgagor for the proceeds without actual notice of plaintiff's rights, and in good faith as commission merchants.

I conclude as a matter of law that in such circumstances defendants are not liable unless the South Dakota statute gives them constructive notice, in which case they would be liable.

I conclude as a matter of law that the South Dakota statute did not give defendants constructive notice of plaintiff's rights. On this subject defendants cite 24 Am. & Eng. Ency. of Law (2d Ed.) p. 146.

I further find that the shipment in question was not made with the consent, either express or implied, of the plaintiff.

[2] In connection with the defense of accord and satisfaction, as before stated, there is a conflict of testimony. Defendants' witnesses Koenig and Anderson clearly support the contention that plaintiff's representative almost immediately following the sale went to the Tallmadge ranches and checked up the cattle, and that about the 18th or 19th of August he called upon Tallmadge in his office at New England, N. D., disclosed his discovery of the shipment to Sioux City, and negotiated for substituted security; that he obtained the substituted security, declaring it to be satisfactory, and the testimony without dispute shows that such security was retained and no further question raised in regard to it until after Tallmadge's death and disappointment over the value and adequacy of such security. True, plaintiff's witness Schwartz denies this strenuously, testifies that these witnesses were not present; that at the time he obtained these securities he did not know of the shipment of cattle to Sioux City, but supposed he was taking additional security on account of winter losses of cattle. It is significant, however, that this settlement took place in August, and that the mortgage covering the 642 head of cattle was signed and witnessed on the 26th of May previous, and it is not supposed that any winter intervened

between those dates, and no controversy seems to have taken place at the time over fraud in the execution of the mortgage. On the whole, I am inclined to accept the testimony of Miss Koenig and Mr. Anderson as substantially true, and I therefore find that about the 19th of August, 1922, the plaintiff's representative Schwartz did, with knowledge of the shipment to Sioux City and for the purpose of adjusting said matter and obtaining substituted security, accept the two sheriff's certificates of sale for land and the deeds mentioned in the testimony.

I further conclude as a matter of law that the action of so adjusting the matter of such shipment was a waiver of the conversion and would release the defendants, even though they were at the time liable.

Upon the whole record I am of opinion that the plaintiff has failed to prove the cause of action set forth in the third count of its petition, and that said count should be dismissed and the costs of the action should be taxed to the plaintiff.

At the close of all the evidence in the case, both parties having moved for a directed verdict, it is ordered that this memoranda and finding of facts be spread upon the record as the finding of the court.