ROBERT DOCKING v. J. A. D. FRAZELL.

1. BUILDING, *Presumed to be Realty, When.* A building situated on real estate and used as the homestead and residence of a family, and also as a hotel, will, in the absence of any evidence or showing to the contrary, be presumed to be real estate.

2. CHATTEL MORTGAGE *on House; Evidence.* Where a person in the possession of such a house under a lease from the owner of the land upon which it is situated, executes a chattel mortgage upon the house, and there is no showing as to when or by whom the house was built, or that the owner of the land ever consented that it should be personal property or be removed, *held*, that the chattel mortgage is not sufficient evidence as against third parties that the house is a chattel.

*Error from Clay District Court.*

FORCIBLE detainer, brought by *Docking* against *Frazell.*
Trial by the court at the May Term, 1884, and judgment for
defendant for costs against the plaintiff. *Docking* brings the
case to this court. The material facts are stated in the opinion.

*J. S. Walker,* for plaintiff in error.

*C. M. Anthony,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of forcible detainer,
brought before a justice of the peace of Clay county, by Rob-
ert Docking against J. A. D. Frazell, to recover the possession
of a leasehold interest in, and a frame building on, lot 1, in
block 43, in the city of Clay Center. The facts of the case,
as shown by the evidence, appear to be substantially as fol-
lows: On May 1, 1880, A. R. Keeler owned the property, or
at least the lot upon which the building is situated, and on
that day he leased the same for five years to A. S. Pierce. The
nature of this lease is not disclosed. On August 14, 1880, A. S.
Pierce sold and conveyed, by deed duly executed and acknowl-
edged, to Frank Piquerez—

"All his interest, claim and demand in and to so much of
lot 1, in block 43, in Clay Center, Clay county, Kansas, as is
occupied by the building known as the 'Lindell House,' and
extending from Lincoln avenue, in said city, the width of said
building, to the alley on south end of said lot, which said party
of the first part holds under and by virtue of a lease from A. R.
Keeler, running from May 1, 1880, to May 1, 1885, being 42
feet north by 140 feet deep."

The name of the building was afterward changed to the
"Eagle House." On September 1, 1880, Piquerez, with his
family, took possession of the property. On July 1, 1881,
Piquerez executed a chattel mortgage on the house and the
furniture therein to Joseph Ruot, to secure seven promissory
notes for $2,000, and filed such mortgage in the register's
office, July 27, 1881. Who Joseph Ruot was, or is, the evi-

dence does not show. Whether he is a myth, or in fact Piquerez, or some person acting under and for Piquerez, or a *bona fide* mortgagee, the evidence does not satisfactorily disclose. On July 26, 1882, Piquerez executed another chattel mortgage on the house and furniture to Ruot to secure five promissory notes for $1,800, and filed the same in the register's office, July 27, 1882. On October 26, 1882, Piquerez became indebted to J. Christmas for the sum of $79.50. In November, 1882, Piquerez absconded from the state of Kansas, and probably went to California, leaving his wife and family in the possession of the property. In February, 1883, W. S. Beatty (the agent of Piquerez) and Mrs. Piquerez rented the property to J. A. D. Frazell, the defendant in this action, and Mrs. Piquerez, with the family, moved out of the house and vacated the property, and Frazell took possession thereof. Frazell was to pay the rent to Beatty, for the benefit of Mrs. Piquerez, but he never paid any rent to either Beatty or Mrs. Piquerez, but paid the same to C. M. Anthony, who was, up to May or June, 1883, the attorney of Piquerez, and at the time the rent was paid, and since, was and has been the attorney of Ruot. Anthony has had knowledge of Ruot only by letter.

On March 16, 1883, Piquerez commenced an action against W. T. Bishop and Samuel Langworthy in the district court of Clay county, to enjoin them from selling the Eagle House, on the ground that it was real estate, and not subject to execution from a justice's court, in which action it was stated by the attorney of Piquerez, under oath, that the property was real estate, and not personal property. The injunction was first granted temporarily, but was afterward, and on May 11, 1883, made perpetual. On June 5, 1883, an attachment was issued in an action then pending in the district court of Clay county, in favor of Christmas and against Piquerez, and was levied upon the property in controversy to satisfy said claim of Christmas, of $79.50. In June or July, 1883, Anthony, as the attorney for Ruot, sold the Eagle House to Ruot for $600, under the last-mentioned chattel mortgage. On September 22, 1883,

judgment was rendered in the said action in the district court, in favor of Christmas and against Piquerez, for said $79.50 and costs.   On October 2, 1883, an order of sale was issued on said judgment; on November 8, 1883, the property in controversy was sold under such order of sale, by the sheriff of Clay county, to Robert Docking, the plaintiff in this action, for $410; on January 16, 1884, the sale was confirmed by the court; and on January 19, 1884, the sheriff's deed to Docking was duly executed, acknowledged, and filed for record in the office of the register of deeds.

The order of sale, the notices thereof, and the deed, described the property as "a leasehold interest in, and one frame building, known as the 'Eagle House,' situated on, lot No. 1, block 43, in the city of Clay Center, Clay county, Kansas;" so that Docking of course got whatever interest in the property that Piquerez then owned.   On February 13, 1884, this action of forcible detainer was commenced before a justice of the peace of Clay county, as aforesaid.   Judgment was rendered in the justice's court in favor of the plaintiff and against the defendant, and the defendant appealed to the district court, where, on May 13, 1884, a trial was had before the court without a jury, and judgment was rendered in favor of the defendant and against the plaintiff, and a motion for a new trial made by the plaintiff was overruled.   On September 15, 1884, a case for the supreme court was duly settled and signed, and on October 13, 1884, such case was brought to the supreme court, duly attached to an appropriate petition in error.

It seems to be admitted by the parties in this court that the first and principal question involved in this case is, whether the building in controversy, known as the "Eagle House," is personal property or real estate.   Of course other questions are raised, but we are inclined to think that they are all either irrelevant or merely subsidiary to this main and principal question.   Some of the questions as presented by the plaintiff are as follows: The plaintiff claims, (1) that the chattel mortgages are void as to the property in controversy, because such property is real estate and not a chattel; (2) that the defend-

ant, as the tenant of Piquerez, is estopped from denying his landlord's title; (3) that because of the proceedings in the case of Piquerez against Bishop and Langworthy the defendant is estopped from denying that the property is real estate; (4) that the chattel mortgages executed to Ruot are void, because of insufficiency of the description of the property; (5) also that they are void, because of fraud; (6) and also that they are void, because the property was the homestead of Piquerez and family at the time when they were executed, and they were not executed by both Piquerez and wife. If, however, the property in controversy is in its very nature and essence personal property, we hardly think that the plaintiff can maintain his action of forcible detainer. While, on the other side, if the property in its very nature and essence is real estate, the chattel mortgages must be considered as void as to it. We shall therefore proceed to consider the nature of this property.

1. Building, when presumed to be realty.

Presumptively, we think it is real estate. (Jones on Chattel Mortgages, § 123.) It is a hotel situated on real estate, has remained there for some years, has been occupied as a homestead and residence by at least two different families, and has been used as a hotel. When it was built, or who built it, is not shown. It may have been built by Pierce or Keeler, or by some previous owner of the real estate; and there is nothing in the record tending to show upon what terms it was built. There is nothing in the record tending to show whether it was the intention of the person or persons building it that it should remain permanently on the land, as a part of the real estate, or that it might be removed at some subsequent time.

As before stated, the presumption is that it was and is real estate. Also, the description of the property in the deed from Pierce to Piquerez would tend to show either that it was real estate, and intended to be such, or that it was not conveyed to Piquerez at all. It was Pierce's interest, claim and demand in and to so much of lot 1, in block 43, etc., as was occupied by the building that was conveyed, and not the building in terms. Piquerez, in the suit against Bishop and Langworthy,

treated the property as real estate, and the court held in their favor, and enjoined its sale as personal property, and because it was real estate; and the only things in the case tending to show that it was personal property, are the two chattel mortgages executed by Piquerez, and the sale of the property by Ruot's attorney, under one of the chattel mortgages, to Ruot; and this we do not think is sufficient. The house had already'been built a long time before these chattel mortgages were executed, and was built before Piquerez had any interest therein or in the land upon which it was built, and was built by some other person than Piquerez. Of course the law that personal property may be attached to real estate, and may remain personal property, with the'consent of the parties, cannot be disputed; but we think it is equally true that property which has once become real estate cannot become personal property by the mere agreement of parties. And this is especially true where injury would necessarily result to the real estate by a removal of the supposed personal property. (Jones on Chattel Mortgages, §§ 124, 130, 131.) If the house in question had been built by Piquerez under an agreement between himself and Keeler, the owner of the real estate, that the house should remain personal property and be owned by Piquerez, it would so remain personal property; but if the house had been built before Piquerez obtained any interest in it, and had become real estate before that time, as presumptively it had, then Piquerez and Ruot could not, by a chattel mortgage or by any other agreement, convert the house into personal property, and especially not if, at the expiration of the lease from Keeler to Pierce and the assignment from Pierce to Piquerez, the entire property was to revert to Keeler, the owner of the real estate. There was no attempt on the part of Piquerez to mortgage his leasehold estate, but it was simply an attempt to mortgage the house and other tangible property, which he considered as chattels. The description of the mortgaged property is as follows:

. "One two-and-a-half-story frame hotel building, located

*2. Chattel mortgage on house; evidence.*

on lot No. — of block 43 of the Clay Center town site, and known as the 'Eagle House;' also all the furniture contained therein, consisting of twenty bedsteads and bedding therefor, one cooking stove, four heating stoves, one-parlor set, dishes, chairs, carpets and all other furniture not particularly described or enumerated herein, but now in possession of the said party of the first part, and kept in said building, as above set forth."

We think the decision of the court below is erroneous. Presumptively, the house in question is a part of the real estate, and no sufficient evidence was introduced to show the contrary. The judgment of the court below will therefore be reversed, and the cause remanded for a new trial.

All the Justices concurring.