No. 24,521.

The Gafford Lumber and Grain Company, *Appellant*, v. (E. T. Eaves, and Eva Eaves, his wife, Jacob Gibbs, and Jane Gibbs, his wife), The Manchester State Bank, *Appellee*.

SYLLABUS BY THE COURT.

1. SALE—*Lumber to Lessee of Land—House Erected on Leased Land—No Lien Filed—Privilege of Lessee to Remove House—Subsequent Mortgages—Priority of Liens.* Where a lumber company sold a bill of lumber to a lessee of land for the erection of a building on the leased ground, the lessee holding possession under an agreement to remove the building at the end of the tenancy; and where the lumber company took no lien on the building, and the lessee later executed a chattel mortgage on the building to a bank to secure an indebtedness, which mortgage was duly recorded; and where the lessee afterwards purchased the land and thereafter executed a real-estate mortgage to the lumber company for the lumber; and where the bank, on conditions broken, foreclosed the chattel mortgage, under which proceeding it purchased and took possession of the building, *Held,* that the rights of the bank to the ownership and possession of the building were superior to those of the lumber company.

2. SAME—*Lumber Company Chargeable with Notice of Existence of Chattel Mortgage.* *Held,* further, that under the circumstances stated, whatever fairly puts a party on inquiry is sufficient notice, where the means of knowledge is at hand, and the lumber company, having neglected to take a lien on the building for more than eighteen months after the sale of the lumber, was bound to take notice of the chattel mortgage and the rights of the bank thereunder.

3. SAME—*Priority of Liens—Equitable Considerations.* *Held,* further, that where one of two innocent persons must suffer, the one should bear the loss

whose conduct or act placed it within the power of a third person to impose upon or deceive another.

Appeal from Dickinson district court; CASSIUS M. CLARK, judge. Opinion filed November 10, 1923. Affirmed.

*E. C. Sweet,* of Minneapolis, for the appellant.
*Arthur Hurd,* of Abilene, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one by a mortgagee to foreclose a mortgage executed by E. T. Eaves and his wife.

It appears that Eaves, in the spring of 1919, purchased from the plaintiff a bill of lumber with which he erected a frame building 70 by 35 feet upon a permanent foundation on certain land in Dickinson county. Eaves held possession of the land under lease with the owners thereof with permission to erect the building and remove the same at the expiration of his lease.

On August 11, 1919, after the erection of the building, Eaves, being indebted to the Manchester State Bank, executed and delivered to the bank his note for $1,150, which he secured by chattel mortgage on the building. The mortgage was filed for record on Octobed 17, 1919, in the office of the register of deeds. Thereafter, on the second day of September, 1920, Eaves became the owner, by warranty deed, of the land upon which the building had been erected.

Thereafter, on December 30, Eaves and his wife executed a note to the plaintiff lumber company in the sum of $861, together with a mortgage covering the land on which the building was situated. The lumber company, on the same date, examined the real-estate records in the office of the register of deeds of Dickinson county, but did not examine the chattel mortgage records, was not informed, and did not know that the Manchester State Bank held a chattel mortgage on the building.

Thereafter, on October 7, 1921, the Manchester State Bank posted printed handbills in four public places in the township in which the building was located, reciting the execution of the chattel mortgage, the breaking of the conditions thereof, and giving public notice that on the 18th day of October, 1921, the premises would be sold at public auction to satisfy the indebtedness of Eaves to the bank. On the 18th of October, 1921, at public sale, held pursuant to said notice,

the Manchester State Bank bid in the frame building and entered into possession of it on said real estate. Trial between the present parties resulted in a judgment for the defendant bank, the court holding its chattel mortgage a prior lien to plaintiff's mortgage, from which judgment the plaintiff appeals.

It is the contention of the plaintiff that the building in question was, to all intents and purposes, a part of the realty; that it had no actual knowledge of the chattel mortgage to the bank; and that the filing of a chattel mortgage in the office of the register of deeds was not constructive notice to it as a subsequent real-estate mortgagee. It cites substantial authority to the effect that a purchaser or mortgagee of realty is bound only to take notice of the record title of the realty, and is not in any way bound to examine the records for chattel mortgages (Jones on Chattel Mortgages, § 134); that the record of a chattel mortgage on personal property which has been affixed to the land so as to become a part thereof is not constructive notice to a subsequent real-estate mortgagee of the claim of the chattel mortgagee. (*Elliot v. Hudson,* 18 Cal. App. 642. See, also, Bronson on Fixtures, § 70-A; *Brennan v. Whitaker et al.,* 15 Ohio St. 446; 26 C. J. 681, 683, 724.)

The authorities cited by the plaintiff are not applicable to the facts in this case. At the time of each original transaction between Eaves and the lumber company, and Eaves and the bank, Eaves was only a lessee of the land in question, and both the plaintiff lumber company and the bank knew or should have known that the building in question was a chattel which could be removed from the land at the expiration of Eaves' tenancy.

The plaintiff did not sell the lumber—did not advance anything on the faith that the building was a part of the realty—because, when the advancement was made, Eaves was a lessee only, and, under his lease the building could not become a part of the realty.

On August 11, 1919, Eaves was indebted to the bank in the sum of $1,150. He owned the building in question which was free and clear of encumbrances. He had full right and authority to secure the bank for his indebtedness, and thereupon executed and delivered to the bank the chattel mortgage on the building. It was duly recorded. In the course of time, when its conditions were broken, the bank exercised its authority, had the building advertised and sold, and purchased it at the sale.

Eaves became the owner of the land on the second of September,

Lumber and Grain Co. v. Eaves.

1920. On December 30, 1920, he executed to the plaintiff lumber company his note and mortgage. The plaintiff, through its mortgage, procured no greater rights to the property in question than then possessed by Eaves.

While a building situated on real estate will, in the absence of any evidence to the contrary, be presumed to be real estate, if it has been constructed under an agreement that it shall be considered personal property, it will so remain. Personal property may, with the consent of the parties, attach to the real estate and remain as personal property. (*Docking v. Frazell*, 34 Kan. 29, 7 Pac. 618.) Ordinarily, the intention of the parties will govern as to whether a building or other fixture placed on land shall become personal property. (*Eaves v. Estes*, 10 Kan. 314.) Whether or not a building or other fixture placed upon land is personal property depends on various considerations.

In *Cent. Branch Rld. Co. v. Fritz*, 20 Kan. 430, 434, 436, it was said:

"It is true, that whether a thing is to be considered as a part of the realty or not, always depends upon its connection with the soil; but this connection may be slight, as well as strong, remote, as well as near, and constructive, as well as actual or absolute; . . . The question depends upon many considerations; and this is particularly so where the article in question was formerly a chattel. Thus, it depends, 1st, upon the *annexation* of the article in question to the realty; and as this annexation may be actual, or constructive, direct, or remote, firm, or loose, and as the article itself may be great, or small, ponderous, or light, and strong, or fragile, it depends also very much upon the ease and convenience with which the article may be again separated from the realty. 2d, it depends upon the right of the parties to so annex the article; that is, the right of the parties to so use the article, and the right of the parties to so use the realty; and as there may be various parties interested in the use or ownership of the article, and in the use and ownership of the realty, this right may be very complex and intricate. 3d, It depends upon the intention of the parties; that is, the intention of the parties making the annexation, the intention of the parties owning and entitled to the use of the article, and the intention of the parties owning and entitled to the use of the realty. Of course, it depends upon the right of the various parties to form this intention, and their right to execute such intention; . . . It has also been held that structures resting on solid foundations firmly imbedded in the earth, are sometimes only personal property. (*King v. Otley*, 1 Barnwell & Adolphus, 161; *Wansborough v. Maton*, 4 Adolphus & Ellis, 884. Many American cases might also be referred to on this point, among which see, *Hartwell v. Kelley*, 117 Mass. 235; *Winte's Appeal*, 10 Penn. St. 252; *Adams v. Goddard*, 48 Me. 212; *Alexander v. Touhy*, 13 Kan. 64.) Even dwelling-houses, resting upon solid and firm foundations,

are sometimes not a part of the realty, but only chattels. (*Mills v. Reddick*, 1 Neb. 437; *Fuller v. Tabor*, 39 Me. 519; *Dame v. Dame*, 38 N. H. 429, and cases there cited; *Van Ness v. Pacard*, 2 Peters, 137; *Osgood v. Howard*, 6 Me. 452; *Adams v. Goddard*, 48 Me. 412. See, also, *Alexander v. Touhy*, 13 Kan. 64; *Hartwell v. Kelley*, 117 Mass. 235.)"

The mechanics' and materialmen's lien laws (Gen. Stat. 1915, § 7557 *et seq.*) give dealers in lumber and building material extraordinary protection in the matter of security for the purchase price of their merchandise. Having this extraordinary protection, dealers, when making a sale of such material, ordinarily ascertain the purpose for which it is to be used. Under the circumstances, the plaintiff was bound to know that the building to be erected with the material furnished by it was to be used upon leased ground with the privilege of removing it at the end of the leasehold period, and that the building was personal property. The plaintiff should have protected itself in the sale of the material. Whatever fairly puts a party on inquiry is sufficient notice where the means of knowledge is at hand. Before accepting the mortgage upon the real estate, the plaintiff was put upon inquiry to ascertain what, if anything, had transpired to affect the title to the building as personal property.

In *Ballou v. Jones*, 37 Ill. 95, it was held:

"Where the lessee of a town lot, having erected a building thereon, supported by posts set in the ground, under a provision in the lease that he might remove all buildings at the end of the term, makes a chattel mortgage upon said building, describing it as personal property, both he and all persons claiming under him will be held estopped from denying that such building is personal property, as against all persons claiming under said mortgage." See, also, *Davis et al. v. Taylor*, 41 Ill. 405; *Hagar v. Brainerd et al.*, 44 Vt. 294; *Brown v. Corbin et al.*, 121 Ind. 455; *Simons v. Pierce et al.*, 16 Ohio St. 215; *Henkle v. Dillon*, 15 Ore. 610.)

In *Ford v. Cobb*, 20 N. Y. 344, it was held:

"Whether an agreement, or the relation between the parties, shall preserve the character of personalty in things so affixed to the freehold, as that but for such agreement or relation they would become a part of the realty, depends upon their essential character, and the mode in which they are annexed, *e. g.*, whether they can be removed without serious damage to the freehold, or substantially destroying their own qualities and value. Salt kettles were bought and mortgaged to the seller as personalty. They were imbedded in brick arches, but could be removed without injury to them, by displacing a portion of the brick at inconsiderable expense, and the course of the manufacture required them to be thus removed and be reset annually: Held, that they continued personalty as against a subsequent purchaser of the salt works,

who had no notice of the facts, other than constructively from the filing of the chattel mortgage."

At the time of the delivery and recording of the bank's chattel mortgage, the plaintiff, because of the conditions, was bound to know that the building was personal property.

Section 1 of chapter 234, of the Laws of 1919, provides:

"Every mortgage or conveyance intended to operate as a mortgage of personal property,   .   .   .   shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds," etc.

This statute, with slight modifications, has been the law for a long period of years.  If, under its provisions, a chattel mortgage is void as to subsequent purchasers and mortgagees in good faith if not recorded, conversely, it is valid as to them if recorded.

In *Brown v. Campbell,* 44 Kan. 237, 240, 24 Pac. 492, it was said:

"The statutes in this state do not in express words enact that a chattel mortgage shall in any case be valid or shall in any case be notice to any person, but by the strongest of implications we think they enact that every chattel mortgage duly and honestly executed, and deposited in the office of the register of deeds, shall be valid and shall be notice as to all the world for the period of one year unless the mortgage debt is sooner satisfied, and shall remain valid and notice as to all the world for each succeeding year, provided the mortgage debt remains unsatisfied, and provided a sufficient renewal affidavit is filed prior to the expiration of each succeeding year." (See, also, *Cameron Hull & Co. v. Marvin,* 26 Kan. 612; *McVay v. English,* 30 Kan. 368, 1 Pac. 795; *Howard v. National Bank,* 44 Kan. 549, 24 Pac. 983; *Dry Goods Co. v. McKee,* 51 Kan. 704, 33 Pac. 594; *Butler v. Case,* 53 Kan. 262, 36 Pac. 330; *Greer v. Newland,* 70 Kan. 310, on rehearing, 315, 77 Pac. 98; *Dixon v. Tyree,* 92 Kan. 137, 139 Pac. 1026; *Cornwell v. Moss,* 95 Kan. 229, 147 Pac. 824.)

Where one of two innocent persons must suffer, that one should bear the loss whose conduct or act placed it in the power of a third person to impose upon or deceive another.  If there was an imposition by Eaves on the plaintiff through failure to disclose to it the chattel mortgage to the bank, the plaintiff, by failure to take other means to protect itself, placed it in the power of Eaves so to do.  It is not shown, however, that actual notice of the bank's chattel mortgage at the time of the execution of plaintiff's mortgage, would have availed plaintiff any more than constructive notice, by which, under all the circumstances, it was bound.

The judgment is affirmed.

BURCH, J. (concurring specially): I concur in the result, for the following reasons: The lumber company sold the lumber for the building to its mortgagor. When the lumber company took its mortgage it was charged with notice of what the record revealed and suggested regarding the mortgagor's land title. The record disclosed the mortgagor did not have title until long after he purchased the lumber and erected the building. This fact suggested some kind of arrangement under which the building was placed on the land. Inquiry would have revealed the building was a chattel when erected, and was covered by chattel mortgage when title was taken.