### No. 39,688

STATE OF KANSAS, ex rel. HAROLD R. FATZER, Attorney General of the State of Kansas, *Appellant,* v. ANCIENT ORDER OF UNITED WORKMEN OF KANSAS, a corporation, *Appellee.*

(283 P. 2d 461)

Opinion filed May 7, 1955.

*Harold R. Fatzer*, Attorney General, argued the cause, and *Paul E. Wilson*, *Charles C. McCarter*, *Thomas M. Evans*, *Robert E. Hoffman*, *Fred W. Rausch*, *Jr.* and *James L. Galle*, Assistant Attorneys General, were with him on the briefs for the appellant.

*Harry W. Colmery*, of Topeka, argued the cause, and *James E. Smith*, of Topeka, *Kenneth G. Speir*, of Newton, and *A. C. Bokelman*, of Washington, were with him on the briefs for the appellee.

*Earl H. Hatcher*, Special Assistant Attorney General, of Topeka, and *Everett E. Steerman*, Special Assistant Attorney General, of Emporia, of counsel.

The opinion of the court was delivered by

PRICE, J.: This is an action by the state, upon the relation of the attorney general, to recover the sum of $110,000 from the Ancient Order of United Workmen of Kansas, a corporation, a fraternal benefit insurance society (hereinafter referred to as defendant), which sum was appropriated by the 1951 legislature and paid to defendant from the general revenue fund of the state for a hospital building located on land owned by the state identified as the State Sanatorium for Tuberculosis, near Norton.

Defendant's demurrer to the second amended petition, on the ground that pleading fails to state facts sufficient to constitute a cause of action, was sustained.

This appeal by the state is from that ruling.

Because of the nature of the case, and in the interest of accuracy, we consider it advisable to set out the material portions of the second amended petition (hereinafter referred to as petition), de-

spite the fact they are lengthy, rather than attempt to summarize its allegations. They are as follow:

"3. On or about the 17th day of January, 1928, the defendant solicited the State Board of Administration of the State of Kansas for permission to construct a building on land owned by the State in fee and identified as the State Sanatorium for Tuberculosis near the City of Norton, Kansas. Pursuant to and as a result of such solicitation, the State Board of Administration purported to agree to the construction of such building and the purported agreement was reduced to writing under the date of January 17, 1928. Such instrument was signed by the officials of the Ancient Order of United Workmen but was not signed by any official of the State of Kansas other than the Attorney General who approved such instrument as to form only. A true and correct copy of such instrument is attached hereto, as Exhibit 'A,' and made a part hereof.

"4. Such purported agreement was entirely void and without any legal effect whatsoever because the State Board of Administration of the State of Kansas had no legal authority under the statutes or the Constitution of the State of Kansas to enter into such understanding or agreement. Neither the State of Kansas nor its officers or agents had any right or authority to grant to the Ancient Order of United Workmen the privilege of using public lands as a private benefit when such benefit does not accrue to the public generally. The nature and character of the private benefit purported and attempted to be granted to the Ancient Order of United Workmen, which benefits did not accrue to the general public, consist of the following: The privilege of constructing a building for its own private use and benefit upon the public lands of the State of Kansas and the use and occupancy of said building, title to which was and has been at all times in the State of Kansas, for its own private purposes, as herein alleged; it was not required to pay, and did not pay any tax on the building used for its private benefit or on the land on which said building was constructed, because title to said building and land was and has been at all times in the State of Kansas, whereas, had defendant constructed a similar building on its own lands, or other private lands, said building and lands would have been subject to assessment and taxation under the Constitution and the laws of the State of Kansas and defendant would have been required to pay to the State of Kansas and its political subdivision taxes in an amount in excess of $100,000.00 from the time said building was constructed until July 1, 1951; the preferred right to place its ailing resident members and policyholders in said building, the title to which was and has been at all times in the State of Kansas, for hospitalization and treatment, to the exclusion of state and county tubercular patients who were citizens of the State of Kansas and members of the general public, and the privilege of receiving for its members and policyholders food, treatment, nursing, surgical and medical care at a cost greatly below the actual cost of furnishing such services to state and county patients; the privilege of holding out to prospective members and policyholders of defendant, as an inducement for the purchase of defendant's memberships and insurance policies, the use of the building, title to which was and has been at all times in the State of Kansas, and the facilities for treatment of tubercular patients therein, without charge or cost to defendant's members or policy-

holders, with the result that the number of defendant's members and policyholders was increased thereby; it did charge its members a special assessment in addition to other membership fees and premiums for the special facilities for care and treatment available to its members at the State Sanatorium for Tuberculosis in a building, the title to which was and has been at all times in the State of Kansas, from which assessment defendant derived a benefit and profit over and above the cost of such services received by its ailing members for food, treatment, nursing, surgical and medical care in said building; the exclusive and preferred right to obtain admission of its members and policyholders who were nonresidents of the State of Kansas into said building, where they received food, treatment, medical and surgical care for a charge less than the actual cost to the State of Kansas, while non-residents of Kansas were not otherwise eligible for admission; its ailing members and policyholders received special preference over other citizens of the state in that such ailing members and policyholders were admitted to said building for treatment of tuberculosis immediately upon diagnosis of such illness, while other citizens of the state of Kansas who were victims of such disease were required to obtain the approval of certain county officials and then wait for admission to said State Sanatorium for Tuberculosis until such time as space was available for their care and treatment; the special privilege and private benefit received by defendant to construct a building upon the public lands of the State of Kansas for its private purposes and the other benefits above set out were not received or enjoyed by any of the several hundred other insurance companies doing business in the State of Kansas, and were not enjoyed by the public generally.

"Such benefits purported and attempted to be granted to the defendant were not authorized by the statutes of Kansas and are in violation of Section 2 of the Bill of Rights of the Constitution of Kansas, which provides that all free governments are founded on the authority of the people and are instituted for their equal protection and benefit.

"5. The defendant did construct a building upon the grounds occupied by the State Sanatorium for Tuberculosis near the City of Norton, Kansas, which land was owned by the State of Kansas in fee simple; that title to the building was and has been at all times in the State of Kansas. There was no agreement that title to the building would not follow the title to the land on which it was constructed.

"Defendant did furnish the building for the treatment of tubercular patients and did maintain the same. The State of Kansas did oversee and supervise said building and did furnish food, heat, light, water, nursing and medical services to the ailing members and policyholders of the defendant. The State of Kansas did, when beds in the building were not being used by ailing members and policyholders of defendant, place state and county patients therein.

"Plaintiff cannot specifically plead whether any of the purported obligations under the purported agreement were performed. Plaintiff alleges that the purported agreement was void and of no effect whatsoever and that neither plaintiff or defendant acquired any rights or obligations thereto.

"6. On or about the beginning of the year 1951, and during the months of January and February, the defendant solicited the State Board of Social Wel-

fare to recommend to the Ways and Means Committee of the House of Representatives that the State of Kansas purchase the building. That pursuant to such solicitations, the State Board of Social Welfare sought and obtained an appropriation from the 1951 Legislature of the State of Kansas in the amount of One Hundred Ten Thousand Dollars ($110,000.00) with which to purchase the building. The appropriation bill is contained in Section 1, Chapter 85, Laws of Kansas, 1951. The State of Kansas paid to the defendant the sum of $110,000.00 for the building and title thereto.

"7. The defendant did purport to convey to the State of Kansas by a 'Deed of Conveyance' fee simple title. A true and correct copy of the purported Deed of Conveyance is attached hereto and made a part of this Petition as Exhibit 'B.'

"8. The legislature of the State of Kansas was without authority to appropriate $110,000.00 to pay the defendant for the purchase of said building. Neither did any official of the State of Kansas, including the Auditor and the State Treasurer, have authority to pay to the defendant the sum of $110,000.00. That said appropriation was void and unconstitutional in that it was made in violation of Section 2 of the Bill of Rights of the Constitution of the State of Kansas, for the reason that the title to the building to be purchased by said appropriation was then vested in the State of Kansas. The legislature is without constitutional authority to appropriate or dissipate the public funds of the State of Kansas for the purchase of property then owned by the State of Kansas; and such appropriation did constitute a transfer of public funds and property of the State of Kansas for the special privilege and benefit of the defendant, as aforesaid, and for its private use and private gain without compensation or equal advantage to all the people, and did deny that equal protection and benefit to all of the people for which the government of the State of Kansas was instituted and established, said building so attempted to be purchased being then the property of the State of Kansas.

"9. The sum of $110,000.00 was illegally paid to the defendant in violation of Section 2 of the Bill of Rights of the Constitution of the State of Kansas and is being illegally retained by it. The sum of $110,000.00 should be recovered by the State of Kansas, together with interest at the rate of six percent per annum from the 6th day of July, 1951."

As alleged, a copy of the contract referred to was attached to the petition as an exhibit. It was entered into on January 17, 1928, between defendant, as party of the first part, and the State of Kansas, by its State Board of Administration, as party of the second part. The body of this contract reads:

"It is agreed that the party of the first part shall erect on the grounds of the State Sanatorium for Tuberculosis for the treatment of tubercular patients, near Norton, Kansas, a suitable building for the care of tubercular patients, this building to be built under specifications now in the hands of Charles D. Cuthbert, State Architect of Kansas.

"Party of the first part agrees to keep and maintain this building and to properly furnish it for the treatment of tubercular patients. The State of Kan-

sas, party of the second part, agrees to furnish the ground upon which this building shall be built, to oversee it as one of the units of the State Sanatorium for Tuberculosis, to furnish heat, light, and water. This building is to be available for the occupancy of patients from the membership of the party of the first part. The party of the first part shall pay the expenses of these patients the same as parents, guardians, and counties pay the expenses of patients in the State Sanatorium for Tuberculosis, and when such rooms in this unit are not occupied by members of party of the first part, they are to be available to the use of other patients who are admitted to the State Sanatorium for Tuberculosis."

It was signed by officers of defendant, and was signed and approved by the then attorney general of this state generally, not as to form only as alleged in the petition.

The deed of conveyance referred to in paragraph 7 of the petition, a copy of which was attached as an exhibit, requires no mention other than to say that it is dated July 1, 1951, defendant is party of the first part, the State of Kansas is party of the second part, and the body of the instrument recites:

"WITNESSETH, That said party of the first part, for and in consideration of the sum of One Hundred Ten Thousand Dollars, for which an appropriation was made by the 1951 legislature in House Bill 581, the receipt of which is hereby acknowledged, has sold and by this instrument does sell, assign, remise, release, quitclaim, convey and set over to the State of Kansas, the building now owned by first party, located on the grounds of the State Sanatorium for Tuberculosis, near Norton, Kansas, under the terms of the written contract between the State of Kansas by its State Board of Administration and The Ancient Order of United Workmen of Kansas, dated the 17th day of January, 1928, and all the estate, title and interest, whether real, personal or mixed, of the said party of the first part therein."

From an examination and study of the exhaustive briefs totalling some three hundred pages, it would appear that the parties have overlooked nothing with respect to the question whether the petition states facts sufficient to constitute a cause of action. However, despite the many questions raised, we think that what is true as to most lawsuits may be said of this one—that is, once the fundamental and decisive point is reached and decided, discussion of other questions becomes purely academic and thus immaterial to the ultimate decision. With this thought in mind, we go directly to the controlling issue in the case—ownership of the building which was erected pursuant to the contract of January 17, 1928.

The crux of the state's argument is that title to the building was at all times in the state—therefore defendant had nothing to sell, the state thus bought nothing, and the "purchase price" paid con-

stituted an unlawful and unconstitutional expenditure of public funds. The facts and reasons upon which this conclusion is based are enumerated in the petition and will not be repeated except as they are referred to in our discussion.

Although for purposes of our decision there is considerable doubt as to the necessity for deciding the question whether the State Board of Administration had power and authority to enter into the contract, we nevertheless will touch on the subject briefly.

Article 7, Section 1, of our Constitution makes provision for such benevolent institutions as the public good may require. For many years the public policy of this state, as declared by the legislature, has been to protect the people from the ravages of tuberculosis. (See R. S. 1923, 65-105, *et seq.*, and corresponding sections in G. S. 1949.) Reference to other sections found in R. S. 1923 establishes that at the time this contract was entered into the State Board of Administration had authority to manage and control state institutions such as the State Sanatorium for Tuberculosis (74-101, 76-1503) and was empowered to ". . . control and manage said institutions, including the erection of all buildings, . . ." (74-105.)

It is clear that the basic subject matter of the contract is tuberculosis, treatment of which was at that time, and still is, a public purpose. In cooperating with the state in meeting the problem defendant agreed to erect a suitable building on the grounds of the State Sanatorium for the treatment of tubercular patients. Other provisions of the contract speak for themselves and will not be repeated. The mere fact defendant may have derived some private benefit from the erection and maintenance of the building does not render the contract illegal. The agreement had a public purpose and by its very terms conferred a public benefit—cooperation with and assistance to the state in the treatment of tuberculosis.

The state, through its Board of Administration, had authority to permit the erection of the building by defendant on the grounds of the State Sanatorium for Tuberculosis, and the contract was not invalid for any of the constitutional or statutory reasons urged.

This brings us directly to the question of ownership of the building, but first we pause to mention a contention by the state that the allegation in the petition "that title to the building was and has been at all times in the State of Kansas," is admitted by the demurrer.

We do not agree. In *Preston v. Shields,* 159 Kan. 575, 156 P. 2d 543, it was held:

"Where a party sets forth fully and in detail the specific facts upon which he predicated his title, an additional general allegation of title and ownership is surplusage and constitutes a conclusion of the pleader which is not admitted on demurrer." (Syl. 2.)

Here the state has set out in detail the facts upon which it bases its claim of ownership, and the general allegation of title amounts to nothing more than a conclusion, and as such is not admitted by the demurrer. (See also *Pierce v. Schroeder,* 171 Kan. 259, 264, 232 P. 2d 460.)

Having determined that the contract of 1928, under which the building was constructed, was not invalid for the asserted reason the state was without authority to enter into it, provisions of the contract, or absence of them, become of paramount importance in the determination of ownership of the building down through the years. The state contends that as the contract did not specifically provide the building should remain the property of defendant it therefore, by operation of law, became the property of the state under the general proposition that if one builds a building on another's land it belongs to the latter as part of his land in the absence of an agreement to the contrary.

Concededly, there are situations to which the foregoing principle could apply, but in our opinion this is not one of them. As we read the contract, it gave a permissive use in the nature of a license to defendant to construct the building—that is, it created a license in defendant to use the land for the purposes set forth. The very fact that defendant secured permission to build indicates that it sought to avoid the legal consequences of building without permission.

The general rule applicable to situations such as we have here is as follows:

"Generally a building erected on the land of another by his consent or license does not become part of the realty, but remains the property of the person annexing it. The same results will be achieved if the owner expressly consents or agrees that the building shall remain personalty; and an agreement of this nature may be oral and is not within the statute of frauds, since the agreement involves no sale of an interest in land. . . . and generally it is considered that where the landowner consents to the placing of a building on his land by another without an express agreement as to whether it shall become a part of the realty or remain personalty, an agreement will be implied that such building is to continue personal property,

in the absence of any other facts or circumstances tending to show a different intention." (22 Am. Jur., Fixtures, § 64, pp. 780, 781.)

Detailed discussion of previous decisions of this court on the general subject matter, among them being *Keeling v. Kuhn,* 19 Kan. 441; *Docking v. Frazell,* 34 Kan. 29, 7 Pac. 618; *Smyre v. Kiowa County,* 89 Kan. 664, 132 Pac. 209; *Lumber Co. v. Larmor,* 110 Kan. 670, 205 Pac. 621; *Lumber and Grain Co. v. Eaves,* 114 Kan. 576, 220 Pac. 512; *Farmer v. Golden Rule Oil Co.,* 130 Kan. 803, 287 Pac. 706, and *Blankenship v. School District,* 136 Kan. 313, 15 P. 2d 438, cited by the parties, would be of doubtful value due to their factual dissimilarity to the situation presented here, and neither do we consider it necessary or expedient to encumber this opinion with decisions from other jurisdictions.

In the last analysis the matter simply narrows down to this: Defendant sought and was granted lawful permission to erect a building suitable for the treatment of tubercular patients. It did so. By the terms of the contract defendant agreed to keep and maintain the building and to furnish it properly for its intended purpose. Right of possession and use remained in defendant. It was further agreed that, when available, rooms in the building were to be at the disposal of the state in the furtherance of the common purpose. The contract speaks for itself, and certainly it contains nothing to indicate the building was to become property of the state merely because it was built on state land. The application of the general rule governing such a situation is clear—that when a landowner consents to the placing of a building on his land by another, without an express agreement as to whether it shall become a part of the realty or remain the property of the person placing it there, in the absence of any other facts and circumstances tending to show a different intention, an agreement will be implied that the building is to remain the property of the one placing it there. There being no other facts and circumstances tending to show a different intention, we hold, therefore, that title to the building was at all times in defendant. Such being the case, the 1951 legislature possessed power and authority to appropriate funds for its purchase.

This opinion might very well end with what already has been said, but in view of the unusual nature of the case the court is of the opinion that it should mention another reason for its conclusion.

Even if it be assumed, solely for the sake of argument, that the state, through its Board of Administration, lacked authority to enter into the contract whereby defendant was given permission to construct the building, the fact remains that it was entered into and the building was constructed pursuant thereto. Moreover, it is conceded that at all times, and by the mutual consent of all parties concerned, defendant occupied and controlled the building under a claim of right and ownership recognized by the state, notwithstanding that through the years it was used by both defendant and the state in furtherance of the common purpose. Having recognized such rights in defendant, and having accepted the benefits, the state, in good conscience and equity, and in the recognition of its moral obligation, possessed authority, through the legislature, to ratify the entire transaction and to appropriate funds for the purchase of the building.

It is elementary that in our form of government power to govern is conferred upon three coordinate branches or departments—the legislative, the executive and the judicial. Each is independent and supreme within its own sphere, subject only to constitutional limitations. The legislature makes the laws, the executive administers and executes them, while the function of the judiciary is to interpret, explain and to apply the laws to controversies concerning rights, wrongs, duties and obligations arising under the laws. Except for certain constitutional limitations and restrictions, which are inapplicable to the facts presented here, the control and disbursement of funds belonging to the state are subject to the will of the legislature, unfettered by interference by the executive or the judiciary. Judicial examination of any law enacted by the legislature proceeds on the assumption that it is valid unless it contravenes an express inhibition of the constitution or one necessarily implied from some express affirmative provision of that instrument. For a discussion of the general principle involved see *Hicks v. Davis*, 97 Kan. 312, 154 Pac. 1030. No such showing of invalidity of the act in question which appropriated funds for the purchase of the building has been made, and it therefore stands.

Numerous other arguments which, through the industry and ingenuity of counsel, have been made in support of their respective contentions have been neither overlooked nor ignored. All have been carefully examined and considered, but, in view of our decision, require no discussion.

We therefore hold:

The contract of January 17, 1928, whereby defendant was granted permission to construct the building in question, was not invalid for any of the reasons urged. Ownership of the building at all times remained in defendant, and the state had authority to purchase it. Further, even though it be assumed, solely for the sake of argument, that the state lacked authority to enter into the contract in the first instance, the action of the 1951 legislature in appropriating public funds for the purchase of the building was, for the reasons stated, not invalid.

The petition fails to state facts sufficient to constitute a cause of action, and defendant's demurrer thereto was properly sustained. The judgment of the trial court is therefore affirmed.

SMITH, J., not participating.