NOT DESIGNATED FOR PUBLICATION

No. 124,117

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF ESKRIDGE, KANSAS,
*Appellee,*

v.

JOHN F. MCGIVERN II, Trustee of the
JOHN F. MCGIVERN, II TRUST, dated February 18, 1998,
*Appellant.*

MEMORANDUM OPINION

Appeal from Wabaunsee District Court; JEFFREY R. ELDER, judge. Opinion filed July 1, 2022.
Affirmed.

*Kevin J. Grauberger*, of Riordan, Fincher & Mayo, P.A., of Topeka, for appellant.

*Todd A. Luckman*, of Stumbo Hanson, L.L.P., of Topeka, for appellee.

Before HILL, P.J., COBLE, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: The City of Eskridge (City) sued John F. McGivern II, Trustee of the John F. McGivern II Trust, dated February 18, 1998 (McGivern), alleging that McGivern committed trespass by building a sidewalk and a dock on City property without authority to do so. Both parties filed competing motions for summary judgment and the district court granted summary judgment for the City. McGivern appeals. After a review of the record, for the reasons stated below we affirm the decision of the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

McGivern owns a house and land that adjoin the shoreline of Lake Wabaunsee. The City owns the lake and lakeshore. Since the 1950s, the City has allowed lot owners to construct docks and other structures on City property if they do so in compliance with City ordinances. Eskridge City Code (city code) provides that "[n]o structure shall be built, installed or constructed on Lake Wabaunsee Park property owned by the city without first complying with the following procedure." Such procedure requires, among other steps, that:  (1) the landowner file a permit application and fee, (2) the plan be reviewed by a public officer who makes written findings and recommendations to the governing body, (3) the governing body approve, deny, or grant the application subject to conditions, (4) the city issue a construction permit upon approval of the application, (5) upon completion of construction, the landowner must notify the public officer and request a final inspection, and (6) the public officer either approve the structure or, if the structure is noncompliant with the permit, order the structure reconstructed or removed.

In April 2017, McGivern submitted a form Lake Wabaunsee Structure Permit Application seeking to construct a sidewalk on the City's property. McGivern received an approval letter from the Corps of Engineers, dated May 8, 2017, regarding the sidewalk. In May 2017, McGivern filed a second permit application seeking to construct a dock on the lake.

On May 15, 2017, McGivern built the sidewalk and dock. McGivern admits the dock and sidewalk were constructed without a permit or permits being approved by the City. He later submitted "'As Built'" structure permit applications for the dock and sidewalk, which were denied by the City Council on April 23, 2018.

On October 2, 2018, the City filed a petition alleging McGivern had committed trespass, seeking ejectment, and a declaratory judgment or mandatory injunction. The

parties filed competing motions for summary judgment. The facts as laid out above reflect the uncontroverted facts advanced by the parties in their respective motions.

The district court held a hearing on the parties' motions for summary judgment. The City argued that a trespass had occurred because McGivern built structures on the City's land and McGivern did not have any lawful authority to do so, because the only way to gain lawful permission would be to follow the procedure in the city code. The City asked the district court to cure the trespass by ordering removal of the structures. McGivern admitted that the structures were built without approval or permits. But McGivern asserted that because the city code defines unapproved structures and provides a procedure for the City to have the unapproved structures removed, the City should be precluded from bringing a trespass action. McGivern claimed the issue could be summarized to whether he did what the City has allowed other landowners to do, and that his structures were identical or substantially similar to what others had built. McGivern argued that, because his structures conformed to the types of structures generally allowed, he had a license to build the structures.

During the summary judgment hearing, McGivern also maintained he acted in good faith based on information he received from the city clerk. But he acknowledged that even if he received permission from the city clerk, the city clerk did not have authority to bind the City and grant approval under the process. Before he could continue this argument, the district court questioned whether McGivern had stated facts about the city clerk and his alleged good faith, and whether McGivern had supported his assertions with an affidavit or deposition in his motion for summary judgment. McGivern admitted he did not and stated he did not think the issue was controlling for a summary judgment motion.

3

McGivern then argued that if a trespass had occurred, further proceedings were necessary to determine the proper remedy because removal is not the only remedy available to the court.

The district court granted summary judgment for the City. The district court found no material facts were in dispute, adopted the City's arguments regarding trespass, rejected McGivern's argument on good faith, and ordered the structures removed. McGivern timely appealed.

ANALYSIS

On appeal, McGivern argues that the district court erred in granting summary judgment to the City on its common law trespass claim. A trespass occurs when one enters the premises of another "without any right, lawful authority, or express or implied invitation or license." *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 22, 378 P.3d 1090 (2016). "Trespass requires an 'intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter.'" 305 Kan. at 22. The district court found that based on the undisputed facts, the City proved its trespass claim as a matter of law because McGivern built structures on city property and had no right, authority, invitation, or license to do so.

McGivern first claims that the district court erred in finding the City could advance a trespass claim because he contends the City must utilize the provisions of the city code in order to enforce the city code. He then argues that the district court erred in finding he did not have a common law license, or some other form of authority, to build his structures. McGivern then maintains the district court erred in its decision to require removal of the structures.

4

Before addressing the merits of McGivern's appeal, it is important to understand the procedural posture of this case. The district court granted summary judgment for the City, finding no disputed facts and that the undisputed facts established McGivern had committed trespass as a matter of law. But in his appellate briefing, McGivern's recitation of the facts in this case—and some of the facts he relies upon in his analysis—do not come from the facts he or the City supported in their motions for summary judgment.

*Standard of Review*

Appellate courts apply de novo review to a district court's decision to award summary judgment, and:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *Fairfax Portfolio v. Carojoto*, 312 Kan. 92, 94-95, 472 P.3d 53 (2020).

*Summary Judgment Procedure*

Fatal to McGivern's arguments is that the summary judgment procedure limits what facts this court may rely on in issuing its decision. The procedure, encapsulated in Supreme Court Rule 141(a)(1) (2022 Kan. S. Ct. R. at 223), requires the moving party to state, "concisely, in separately numbered paragraphs, the uncontroverted contentions of

fact on which the movant relies" and provide a reference to where in the record the fact appears. *Frick v. City of Salina*, 290 Kan. 869, 878-79, 235 P.3d 1211 (2010). The opposing party must then state whether the movant's fact is uncontroverted or controverted. Rule 141(b)(1). If controverted, the opposing party must provide a precise reference to the evidence controverting the fact. Supreme Court Rule 141(b)(1). The Kansas Supreme Court has "repeatedly emphasized that 'Rule 141 is not just fluff—it means what it says and serves a necessary purpose.'" *Frick*, 290 Kan. at 879. Thus, the facts before the district court, and the only facts relevant to this court's review, are those that were advanced by the parties in their motions for summary judgment and agreed to be uncontroverted in their responses.

*The District Court Did Not Err in Granting Summary Judgment on the Trespass Claim.*

McGivern first challenges the district court's decision that a trespass claim was the proper action at all. McGivern argues that because the City chose not to enforce the city code provisions through the administrative procedures set out in the code for "'offending structures,'" it cannot then rely on the same city code to prove its trespass claim. McGivern asserts that the City "cannot have it both ways in the same cause of action," pursing a common law trespass action to enforce the provisions of the city code based solely on violations of the city code.

The City counters that because it had to prove that the structures were on its land without authority, it was not improper for it to reference the city code, because the code establishes how a landowner could gain authority to place structures on City land. The City asserted that McGivern had no right, authority, invitation, or license to build the structures. But instead of merely declaring he had no right, authority, invitation, or license to build the structures, the City went a step further and acknowledged that there was a single way—outlined in the city code—for adjacent landowners to gain authority to build structures on City land surrounding Lake Wabaunsee. The City then emphasized,

6

and McGivern admitted, that he did not follow this procedure. Thus, the city code was relevant only to the point that it outlined a means for landowners to obtain authority to build structures on City property. Any reference to the city code is simply ancillary information supporting the City's claim that McGivern did not have authority to build structures on its land.

This court agrees. McGivern's argument merely muddies the waters of what is otherwise a straightforward trespass claim. To prove its trespass claim, it was necessary for the City to demonstrate that the trespass was done without authority. McGivern did not dispute that his structures are on the City's land, so the issue before the district court was whether the structures were on the City's land with no right, authority, invitation, or license. And even assuming the city code provided a procedure for dealing with structures built without permits, McGivern simply points to no authority that would require the City to proceed under that specific procedure as opposed to filing a trespass claim. The failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). As a result, the district court did not err in allowing the City to proceed with its trespass claim.

McGivern then asserts that the district court erred in granting summary judgment to the City because "there were material questions of facts as to whether he had a license to build" the structures. The City counters that McGivern did not obtain a license or other authority to build his structures because he did not follow the procedure outlined in the city code—which, again, is the only way to obtain authority to build structures on its property.

"[A] licensee is one who enters or remains on the premises of another by virtue of either the express or implied consent of the possessor of the premises, and, therefore, is

7

not a trespasser thereon." *Calvert v. Garvey Elevators, Inc.*, 236 Kan. 570, 573, 694 P.2d 433 (1985).

McGivern first suggests he had a "common law license" to construct the structures. In support, McGivern maintains that the city code and the "ongoing, permissive arrangement for the last sixty years for lake lot owners to construct docks and other man-made structures . . . is enough to demonstrate the existence of a license . . . ." But this argument is unpersuasive. McGivern simply asserts that he gained a license based on the City allowing other landowners to construct structures over the years. But McGivern acknowledges in his summary judgment motion that "[h]omeowners that surround Lake Wabaunsee have a '*limited right* to build structures and docks on City property on the lake shore' *if the homeowners follow the City Code in so doing*." (Emphases added.) Thus, McGivern admits in his summary judgment motion that the other landowners' right to build was limited by compliance with the city code. McGivern tries to avoid this by again claiming that this court must disregard the existence of the city code and somehow impute a "common law license," based solely on the existence of other structures on the lake with no regard to how those structures got there. But this argument lacks a logical or legal basis—especially considering that in the same paragraph he asks this court to consider the language of the city code as supporting his "common law license" argument. As discussed above, there is no reason not to consider the city code in addressing the City's trespass claim.

Additionally, the authority McGivern cites does not advance his position. He first cites *State ex rel. Fatzer v. Ancient Order of United Workmen*, 178 Kan. 69, 283 P.2d 461 (1955), which involved a dispute between the State and a corporation over who owned a building built on State land under a contract between the State and corporation to establish a treatment center for tubercular patients. McGivern asserts that the case suggests the "language of a writing may grant permissive use in the nature of a license . . . ." But the court in *Fatzer* discussed that the corporation gained a license to use

8

the land *through the contract* between the State and the corporation. 178 Kan. at 76. Here, McGivern concedes that he did not follow the procedure in the city code. Thus, it is unclear how he could have gained a license through the language of the city code without following the provisions of that same code.

McGivern also relies on *Smyre v. Kiowa County*, 89 Kan. 664, 132 P. 209 (1913), which dealt with a dispute over a stairwell in a building. The building was originally built, owned, and operated by two parties. The original two parties then passed their portion of the building to Smyre and the county. The stairway was technically owned by Smyre but was the only way to access the county's portion of the building. Smyre claimed that the county owed him rent to use the stairwell. The court disagreed, finding an irrevocable license had been created based on the construction of the building by the former owners under a common plan by which there was no separate way to access what is now the county's portion of the building, and the common use of the stairway by Smyre and the county. 89 Kan. at 669. The court relied on the rule that when an owner of land permits another repeatedly to do acts on the land, a license can be implied from the landowner's failure to object. 89 Kan. at 669.

*Smyre* is factually distinguishable, as McGivern concedes in his reply brief, and is otherwise unhelpful to his cause. McGivern quotes *Smyre* for its assertion that "'use [of common area] . . . for many years created a parol license.'" But this case does not help his position. The City's land is not a common area and the City clearly objected to McGivern's actions by filing the instant trespass action. Thus, *Smyre* is unsupportive to McGivern's position. Further, neither of these cases supports his assertion that actions between the City and other landowners could somehow imply that McGivern had a license with the City.

McGivern has not shown that he acquired a license, or any other type of authority, to support the construction of his structures on City property and defeat the City's

trespass claim. Although McGivern's brief goes in depth to discuss the type of license—irrevocable or revocable—he received, and he quibbles over whether the city code provides a license or a lease, this court need not address these arguments in detail. In sum, McGivern contends he acted in good faith by relying upon information provided to him by the city clerk and the Corps of Engineers.

McGivern's citation to "information" provided by the city clerk is not properly before the court, because it was not alleged as a fact in his summary judgment motion or stated in response to the City's summary judgment motion. In fact, when he mentioned this argument at the summary judgment hearing, the district court pointed out that McGivern had not come forward in his response to the City's motion with any evidence to show what, if anything, the city clerk told him. McGivern then explicitly stated that he did not believe the issue was controlling for summary judgment purposes. As a result, the district court could not have erred in granting summary judgment because of this theory when McGivern explicitly stated he was not raising the theory at the time of summary judgment. It was incumbent upon McGivern to come forward with evidence to establish a dispute as to a material fact, and he did not. *Fairfax Portfolio*, 312 Kan. at 94-95.

Similarly, the only fact outlined in the summary judgment briefs discussing a letter from the Corps of Engineers simply mentioned that McGivern received such a letter. But McGivern never explained how the Corps of Engineers' approval provided him any authority to build on City property. Such a requirement is not a step in the city code's process, nor does it establish that he gained some license or other authority to build on the City's property.

In conclusion, the district court did not err in granting summary judgment for the City. The undisputed facts established that McGivern built the sidewalk and dock on City property without any right, lawful authority, or express or implied invitation, or license to do so.

10

*The District Court Did Not Err in Ordering the Structures Be Removed.*

McGivern asserts that even if a trespass did occur, the district court erred in ordering removal of the structures because it did not apply the proper legal test to determine the appropriate remedy. He further contends material questions of fact remain unresolved concerning the damages that should be awarded.

The district court explicitly found that the structures were built "without right or approval" and it rejected McGivern's argument that he was entitled to maintain the structures based on his alleged good faith actions. The district court then ordered McGivern to remove the structures. Thus, as agreed by both parties, the district court— without explicitly stating so—entered a mandatory injunction as relief for the trespass. See *Mid-Am. Pipeline Co. v. Wietharn*, 246 Kan. 238, 242, 787 P.2d 716 (1990) ("Mandatory injunctions require performance of an act, while preventive, or prohibitory, injunctions require a party to refrain from doing an act.").

A mandatory injunction is an extraordinary remedy and a party seeking a mandatory injunction must be clearly entitled to that form of relief. 246 Kan. at 242. The granting of a mandatory injunction is governed by the same rules as the granting of preventative injunctions. 246 Kan. at 242. This court has generally required a movant to prove four elements, known as the balancing of equities test, to obtain injunctive relief:

> "'(1) [A] substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.'" *Friess v. Quest Cherokee*, 42 Kan. App. 2d 60, 64, 209 P.3d 722 (2009), *as corrected* (July 23, 2009).

11

But this balancing of equities test "'is reserved for the innocent defendant who proceeds without knowledge or warning that he is encroaching upon another's property rights.'" 42 Kan. App. 2d at 66 (quoting *Wietharn*, 246 Kan. at 247). Kansas courts have found an exception to the balancing of equities test when the party seeking an injunction has "'clearly defined rights . . . that are recognized and protected by law' and that party otherwise satisfies the prerequisites for injunctive relief." *Friess*, 42 Kan. App. 2d at 64 (quoting *Wietharn*, 246 Kan. at 242). "Where there has been shown an ongoing or continuing violation of a landowner's rights by the construction of trespassing structures, the general rule is that legal remedies are inadequate and that injunctive relief is appropriate." *Friess*, 42 Kan. App. 2d at 65.

McGivern argues that because he maintained throughout the proceedings that he believed he was authorized to build the structures—based on the information he claims he was provided by the city clerk and the Corps of Engineers approval letter—the "weighing the equities" test should have been applied before ordering removal of the sidewalk and dock. McGivern also asserts that removal constitutes an inequitable result as he can rebuild the structures after submitting another application.

The City responds that although the district court did not explicitly state that the *Wietharn* exception applied, the district court made the correct decision under that exception. The City asks this court to find that the *Wietharn* exception applied and that as a matter of law it was entitled to the injunction. In the alternative, the City asserts that the evidence presented establishes that it would have met the balancing of equities test if it applies instead.

McGivern maintains that the summary judgment standard of review also applies to this issue. The City does not dispute McGivern's assertion. As laid out above, appellate courts apply de novo review to a district court's decision to award summary judgment. Similarly, when the appellant, like McGivern, asserts that the legal requirements for

12

injunctive relief have not been met, the question is an issue of law subject to de novo review. *Friess*, 42 Kan. App. 2d at 63-64. Otherwise, the decision to grant a mandatory injunction rests within the discretion of the trial court and this court will not overturn the decision absent a "manifest abuse of that discretion." 42 Kan. App. 2d at 63.

McGivern's argument fails. As a threshold matter, as discussed above, McGivern did not properly establish what information, if any, he received from the city clerk or how the Corps of Engineers' letter somehow gave him authority for the trespass. The City clearly sought a mandatory injunction and outlined the standards for the same in its summary judgment motion. Pursuant to the summary judgment rules, it was necessary for McGivern to come forward with evidence to establish a dispute as to his alleged good faith actions. Without such evidence, he did not establish an issue of material fact which might have precluded summary judgment. Because evidence of his actions was not provided, the district court explicitly rejected McGivern's argument that he was entitled to maintain the structures based on his alleged good faith actions. Thus, there was no material dispute of fact preventing the district court from issuing a mandatory injunction so long as the City proved it was entitled to the injunction as a matter of law.

Likewise, by finding McGivern's good faith argument failed, McGivern's argument that the district court should have applied the balancing of equities test also fails. The balancing of equities test "'is reserved for the innocent defendant who proceeds without knowledge or warning that he is encroaching upon another's property rights.'" 42 Kan. App. 2d at 66 (quoting *Wietharn*, 246 Kan. at 247). McGivern admitted that the City owns the property and that landowners are allowed to construct structures based on the ordinances. He also conceded that he did not follow the city code's permit procedure. Thus, McGivern was not an innocent defendant. He knew he was building on City property and he had not received the proper permits. "Where there has been shown an ongoing or continuing violation of a landowner's rights by the construction of trespassing structures, the general rule is that legal remedies are inadequate and that injunctive relief

13

is appropriate." *Friess*, 42 Kan. App. 2d at 65. Therefore, a mandatory injunction was appropriate.

Finally, McGivern's assertion that the injunction is inequitable and causes him undue hardship because he would just have to rebuild the structures after acquiring the proper permits is unpersuasive. McGivern points to no law or authority that would prohibit the district court from issuing an injunction despite claimed inequity or hardship. Further, it is disingenuous for McGivern to acknowledge he did not follow the proper procedure and now claim that he should nonetheless be allowed to maintain the buildings because he could have followed the procedure.

In sum, the district court did not err in awarding summary judgment to the City and entering a mandatory injunction as the remedy.

Affirmed.